168 So.2d 131 (1964)
HOME DEVELOPMENT COMPANY OF ST. PETERSBURG, INC., and Roy J. Deeb and Marilyn K. Deeb, his wife, Petitioners,
v.
Rudolph BURSANI and Lillian Bursani, Individually and as husband and wife, Respondents.
No. 33242.
Supreme Court of Florida.
October 2, 1964.
Rehearing Denied November 10, 1964.
Kiernan & Reams, St. Petersburg, for petitioners.
Nelson, Beckett & Nelson, St. Petersburg, for respondents.
PER CURIAM.
This cause is before the court on "direct conflict" certiorari to review a decision of the Second District Court of Appeal affirming a decree of the Circuit Court in and for Pinellas County.
Probable jurisdiction having been made to appear, the cause was set down for oral argument on the question of jurisdiction and on the merits and is now before the court for decision in the light of such argument and the briefs of the parties.
The litigation arose out of a disagreement between the petitioner Deeb and the respondent Bursani, each of whom (with their respective spouses) are the owners and holders of 50 percent of the stock of the petitioner corporation, Home Development Company of St. Petersburg, Inc. This corporation was organized by the parties in 1957 for the purpose of building houses for sale for a profit, the parties having previously *132 engaged in a similar joint venture in the name of a corporation wholly owned by Mr. Deeb. The charter of the newly formed corporation provided, in Article III thereof, for the issuance of 100 shares of common stock and specifically restricted the sale thereof, as follows:
"* * * the same are to be restricted as to sale, requiring the owner and/or holder of such shares to offer the same in writing to the corporation at book value or market value, whichever shall be higher in dollar value and requiring the corporation to purchase same or to distribute to such stockholder assets of the corporation as purchase price for such stock. The fair market value of such assets as distributed shall be equal to the dollar purchase price of such stock as provided for herein. The corporation shall purchase said stock herewith within thirty days of the offer as provided for herein or the holder thereof may sell the same to any person or take such legal action as may be necessary to enforce this provision."
The parties also entered into a stock-purchase agreement, at the time of the formation of the corporation, by which the Bursanis agreed to sell to the corporation, at the request of the Deebs, their shares of stock "in accordance with the procedure set forth in ARTICLE III, Section 1, of the corporation charter;" the Deebs agreed that, at the request of the Bursanis, they would "cause the capital stock of the [Bursanis] to be purchased pursuant to ARTICLE III-Section 1, of the corporation charter;" and the corporation agreed that, at the request of either the Deebs or the Bursanis, it would comply with the provisions of Article III of the charter.
About a year and a half and some thirty-four houses later, the parties came to a parting of the ways; and, after an exchange of correspondence in which Mr. Bursani's attorney advised Mr. Deeb that he had until December 17, 1959, to make a proposal to purchase the Bursanis' stock, otherwise he would advise Mr. Bursani to bring a stockholder's suit for an accounting etc. to dispose of Mr. Bursani's holdings in the corporation, and a reply by Mr. Deeb's attorney to the effect that the corporation was exercising its stock purchase rights as of December 17, 1959, and would proceed "with all due dispatch" to determine the value of the Bursanis' stock "according to the provisions of the charter", the instant suit was filed by the Deebs and the corporation, as parties plaintiff, against the Bursanis, praying for injunctive relief against the allegedly damaging interference by Mr. Bursani with the corporation's business affairs and "for such further orders as may be required for the enforcement of the contract for the sale by [the Bursanis] of their stock in the plaintiff corporation to the plaintiff corporation."
The Bursanis filed an answer and counterclaim, denying the alleged interference, alleging that they were ready and willing to convey their stock to the corporation upon the payment to them of the "actual book value" of the stock after the same was ascertained "after a full and complete accounting", and counterclaiming for amounts allegedly due them on promissory notes of the corporation, the use by the corporation of a truck owned by them, and other items.
The cause was referred to a Special Master to hear the testimony, to "state" an accounting, to make findings of fact and draw conclusions of law, and report the same and his recommendations to the court. Although voluminous testimony was heard by the Master, the salient facts are few. As shown by his report, an independent audit of the corporation's books and records was made, which showed corporate assets  consisting of cash, notes and accounts receivable, contracts for the sale of houses, unsold houses, and vacant lots  having a net worth of $36,882.76 as of December 17, 1959. The unsold houses (nine of them) were shown on the books at cost (some $95,000.00) without a projection of estimated profit.
Based on this audit, the Deebs offered on behalf of the corporation, as the purchase *133 price of the Bursanis' stock, certain of the contracts for the sale of houses previously sold  having the equivalent in dollar value, according to the brief of the petitioners, of more than one-half of the net worth of the corporation as shown on the books and audits as of December 17, 1959. This offer was declined by the Bursanis  and rightly so, according to the Special Master. The Master found that "in arrogating unto themselves all of the completed but unsold houses and all of the other assets except these contracts for sale, [the Deebs] were under the circumstances basically unfair and inequitable to Mr. and Mrs. Bursani in that Bursani's efforts also aided in the production of these assets"; that the contract "contemplated a distribution of the assets in existence at the time of the exercise of the option to purchase"; that the Deebs and the corporation had breached the stock-purchase agreement; and that the Bursanis were entitled to a money decree for damages "based upon the reasonable value of the assets which they would have received if an equitable distribution of assets had been made in accordance with the contract."
He recommended that a money decree be entered against the corporation and the Deebs individually, and impressed as an equitable lien against the corporate assets, in the amount of $34,694.98  being one-half of the net worth of the corporation as shown by the audit mentioned above and one-half of the estimated profit on the nine houses that were unsold on December 17, 1959 (estimated to be $16,118.20 after a 30% tax deduction) and the remainder (some $8,000.00) being sums found to be due and owing to Mr. Bursani on account of the promissory notes and one other item of indebtedness. He recommended that the Bursanis be awarded interest on the amount of the decree at the legal rate of 6% from January 17, 1960, until paid, and that the entire cost of the litigation  including a Master's fee of $1,500.00  be assessed against the Deebs. The Deebs' exceptions to the Master's report were overruled and a decree was entered in accordance with his recommendations (some $40,000.00, which included an award of $6,000.00 as interest from January 1960). As noted, the decree was affirmed upon appeal to the District Court of Appeal, Second District, and review is now sought here by way of conflict certiorari.
Our attention is first directed to the question of this court's jurisdiction under Article V of the Constitution of Florida, F.S.A., to review the cause. We find the performance of our constitutional duty in making such determination to be more difficult because we do not have the benefit of an opinion agreed to by a majority of the District Court. This court has no absolute rule that requires an appellate court to write an opinion in deciding a cause brought before it, but in some instances requests have been made for such opinions, and each time the request has been promptly complied with. Cf. State v. Bruno, Fla., 104 So.2d 588, and Rosenthal v. Scott, Fla., 131 So.2d 480. In the absence of an opinion by the District Court we have examined the record proper and from such study are concerned about certain questions presented in the appeal, viz.:
(1) Did the trial court commit error in entering a money judgment in view of the contract which apparently provided for the purchase of certain shares of stock by barter of corporate assets rather than in dollars?
(2) Did the trial court commit error in entering a money judgment against certain stockholders of the corporation for a corporate obligation when no finding of fraud had been made?
(3) Did the trial court commit error by including in its calculation of a money judgment a substantial item representing anticipated future profits on certain unsold assets of the corporation, against a contention that the computation of such future profits on the prospective sale of such unsold assets appear, on cursory examination of the Master's report, to be speculative and conjectural and apparently *134 predicated upon past profits of past transactions of the same corporation and in different economic climates?
Further consideration of the record proper indicates that our final decision in the jurisdictional question would be facilitated by, and this court's duty to preserve harmony and uniformity among the decisions of the appellate courts of this State could be more readily performed by, an expression of the appellate court of the theory and reasoning upon which its judgment is anchored, and particularly the theory and reasoning of its disposition of the questions mentioned above. In these circumstances we do not deem it unreasonable to request the appellate court to do so. See State v. Bruno, supra; and Rosenthal v. Scott, supra, and cases therein cited including particularly State of Minnesota v. National Tea Co., 309 U.S. 551, 60 S.Ct. 676, 84 L.Ed. 920.
Accordingly, request is respectfully made to the District Court of Appeal, Second District, that it reconsider the cause and particularly the questions mentioned earlier herein, and adopt an opinion setting forth the theory and reasoning upon which a decision in the cause is reached; and jurisdiction is relinquished to that Court, temporarily, for that purpose, upon completion of which this court will proceed to determine whether or not the cause should be reviewed here under Article V, Constitution of Florida.
It is so ordered.
DREW, C.J., ROBERTS, O'CONNELL, CALDWELL and ERVIN, JJ., concur.
THORNAL, J., dissents.
THOMAS, J., heard argument but did not participate in decision.
THORNAL, Justice (dissenting).
I respectfully dissent because I feel that the Supreme Court lacks jurisdiction to enter the judgment agreed to by the majority.