334 So.2d 585 (1976)
GOLDEN LOAF BAKERY, INC., Petitioner,
v.
CHARLES W. REX CONSTRUCTION CO., Respondent.
No. 47318.
Supreme Court of Florida.
June 23, 1976.
*586 Eli H. Subin, of Subin, Shams, Rosenbluth & Moran, Orlando, for petitioner.
D. Arthur Yergey, of Yergey, Yergey & McKnight, Edna L. Caruso, of Howell, Kirby, Montgomery, D'Aiuto & Dean, and Robert G. Murrell, of Sam E. Murrell & Sons, Orlando, for respondent.
PER CURIAM.
Having heard oral argument, the Court is of the opinion that the writ of certiorari heretofore issued in this cause should now be discharged.
It is so ordered.
OVERTON, C.J., SUNDBERG and HATCHETT, JJ., concur.
ENGLAND, J., concurs with an opinion, with which OVERTON, C.J., concurs.
ROBERTS, J., dissents with an opinion.
ADKINS and BOYD, JJ., dissent and concur with ROBERTS, J.
ENGLAND, Justice (concurring).
I agree that this Court has no jurisdiction to review the decision of the Fourth District Court of Appeal as reported at 311 So.2d 390. The majority opinion of that court reads, in its entirety, "affirmed". Judge Walden dissented and filed an opinion expressing his reasons for disagreement. Since in this case there is no reviewable "record proper"[1] underlying the majority's affirmance, the sole basis for our jurisdiction is a "direct conflict" in decisional law[2] arising from the dissenting opinion. I do not believe that conflict jurisdiction should ever be grounded on a dissenting opinion of a district court.
I am aware of previous statements by this Court that a dissenting opinion can form the basis for conflict sufficient to invoke our jurisdiction under Article V, § 3(b)(3) of the Florida Constitution.[3] In my view, however, the dangers of that practice, one of which is described in our opinion in Commerce Nat'l Bank v. Safeco Ins. Co.,[4] far overshadow any value that might be derived in any particular case from our exercise of conflict jurisdiction based on dissenting views.
This Court's conflict jurisdiction was created in 1957, at the same time the legislature established the district courts of appeal.[5] The obvious and limited purpose of that form of appellate review was to allow us to clarify the law when it becomes *587 necessary under the new court structure created by the Constitution. Where our views on a matter of law are not absolutely necessary, we should not express them.[6] Moreover, the constitutional role of our district courts as courts of last resort[7] is unnecessarily diminished to the extent we use this discretionary jurisdictional tool to express ourselves in situations which do not require our clarification.
The district court's majority undoubtedly has established the law of this case insofar as the parties, their counsel and the trial judge are concerned. It is certainly conceivable, as petitioner suggests, that both the trial court and the appellate majority are legally "wrong" in a decision which now has precedential significance in that appellate district.[8] But whether they are or not cannot be determined in a case where the alleged "direct conflict" in decisions is premised on the dissenter's view of what the majority did, without first ascertaining whether the dissent has correctly characterized the legal effect of the majority's action. My principle objection to "dissent conflict" stems from my unwillingness to ascribe to the dissenter the power to speak for the unspoken majority. In this case, for example, respondents vigorously contest the dissenter's characterization of the majority's affirmance.
For these reasons, I would expressly overrule all cases which hold that conflict jurisdiction may be premised on a dissenting opinion.
OVERTON, C.J., concurs.
ROBERTS, Justice (dissenting).
I must dissent from the majority decision to discharge the writ as improvidently granted. Conflict with the instant decision of the District Court of Appeal, Fourth District, and R.K. Cooper Builders, Inc. v. Free-Lock Ceilings, Inc., 219 So.2d 87 (Fla.App. 3, 1969), is readily apparent. Cf. Edgar v. Hosea, 210 So.2d 233 (Fla.App. 3, 1968).
The pertinent facts are succinctly stated in Judge Walden's dissenting opinion. Charles W. Rex Construction Co. built a bakery building for Golden Loaf Bakery. The contract specified the floor was to be of poured concrete having the strength of 3,000 pounds per square inch. The floor proved to be faulty, and Golden Loaf had the floor repaired by means of a vinyl latex resurfacing. Golden Loaf sued for damages, claiming as its only measure of damages the total repair cost of $42,000. At the close of plaintiff's case, a verdict was directed for Rex on the grounds plaintiff had offered an incorrect measure of damages. The trial court reached the conclusion that the proper measure of damages was the difference in value between the building as it was built, and as it should have been built. The court found the repair amount of $42,000 was out of proportion to the contract price of $88,000. The court based its ruling on a citation to Edgar v. Hosea, 210 So.2d 233 (3d D.C.A. Fla. 1968):
"`As a general rule, the measure of damages is the cost of correcting the defects or completing the omissions, rather *588 than the difference in value between what ought to have been done in the performance of the contract and what has been done, where the correction or completion would not involve unreasonable destruction of the work done by the contractor and the cost thereof would not be grossly disproportionate to the results to be obtained. On the other hand, the courts generally adhere to the view that if a builder or contractor has not fully performed the terms of the construction agreement, but to repair the defects or omissions would require a substantial tearing down and rebuilding of the structure, the measure of damages is the difference in value between the work if it had been performed in accordance with the contract and that which was actually done, or (as it is sometimes said) the difference between the value of the defective structure and that of the structure if properly completed.'" Id. at 234.
The District Court affirmed the directed verdict for Rex.
I agree with Judge Walden's conclusion that under the circumstances, the trial court's directed verdict was premature and with his reasoning to the effect:
"The defendant has offered no evidence to show that the repair undertaken was not the most reasonable way to make plaintiff whole. The difference in building value measure of damages might have resulted in greater dollar damages. Plaintiff has claimed that the value of the building, as was, was (to the plaintiff) nothing, because the faulty floor rendered the building unsuitable as a bakery under state requirements for structures in the food processing industry.
"Plaintiff gave evidence that to repair the concrete by means of concrete refinishing would have necessitated closing down the bakery operations, and any loss incurred thereby would have been a measure of damages. Prier v. Refrigeration Engineering Co., 74 Wash.2d 25, 442 [P.]2d 621 (1968). In essence, plaintiff claims he has used the most reasonable means of repair.
"It is my opinion that to direct a verdict on the grounds plaintiff had proven an incorrect measure of damages was error, and that it was defendant's duty to present any contradictory evidence in mitigation of those damages. If there was such evidence, plaintiff could not wholly recover, for no plaintiff can profit from a defendant's breach. Ciminelli v. Umland Bros., Inc., 236 App.Div. 154, 258 N.Y.S. 143 (1932). In Ciminelli an owner could not recover the entire cost of repair when he replaced a faulty roof with one that had a longer guarantee than the one he had contracted for.
"The existence of mitigating circumstances and all related factors should be had before the jury, so that it might properly assess the plaintiff's damage claim. R.K. Cooper Builders, Inc. v. Free-Lock Ceilings, Inc., 219 So.2d 87 (3d D.C.A.Fla. 1969), see Webster v. Culver Roadways, Inc., [79 Misc.2d 256,] 359 N.Y.S.2d 863 (1974). It may well be that the plaintiff's action in repairing saved thousands of dollars, or it may be that plaintiff overreached in its choice of repair. It may be that a less expensive, but equally satisfactory, method of repair could have been had, or that the proper measure of damages was the difference between the value of the building as was and as it should have been. These considerations cannot be evaluated before all the facts are brought before the jury and the court. If the floor was faulty and if plaintiff did not prove the proper measure of damages, plaintiff should still recover in an amount equal to the proper measure of damages as found by the jury."
In R.K. Cooper Builders, Inc. v. Free-Lock Ceilings, Inc., supra, which involved a dispute between a contractor who completed a job and a subcontractor who defaulted *589 in performance of a construction contract, the court explained:
"Instead, controlling weight should be given to the actual expenditures, made in good faith, that are necessary to complete the job covered by the original contract. But we hasten to add that a mere showing of the actual expenses for completion is not determinative of the issue of damages, for the general rule permits the defaulting subcontractor to go forth with evidence in order to set off the cost of completion. Such evidence should go toward proving waste, extravagance, or lack of good faith, but the courts will not hear a defaulting subcontractor's claim that the party who was forced to complete the job spent too much absent evidence as to the above factors. See 17A C.J.S. Contracts § 512." (emphasis supplied)
Accordingly, I would quash the decision of the District Court and remand with directions to reverse the judgment of the trial court directing a verdict for respondents.
ADKINS and BOYD, JJ., concur.
NOTES
[1] Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965).
[2] Art. V, § 3(b)(3), Fla. Const.
[3] Commerce Nat'l Bank v. Safeco Ins. Co., 284 So.2d 205 (Fla. 1973); Smothers v. Smothers, 281 So.2d 359 (Fla. 1973); Autrey v. Carroll, 240 So.2d 474 (Fla. 1970); Huguley v. Hall, 157 So.2d 417 (Fla. 1963). Apparently the notion of dissent conflict arose innocently enough in Huguley, where the dissenting opinion set forth the only facts by which the majority's citations of authority could be compared with prior precedents.
[4] 284 So.2d 205, 207-08 (Fla. 1973).
[5] Comm.Sub. for H.J.R. 810, Laws of Fla. (1955) Vol. 1, Part 1 at 1229, effective July 1, 1957. The Constitution says "direct" conflict must exist. By that language, our discretion is "substantially restricted and drastically circumscribed." Nielson v. City of Sarasota, 117 So.2d 731, 734 (Fla. 1960). The concept of judicial restraint should also operate to limit our discretionary review. "It is significant that, under the constitution the issuance of conflict certiorari is discretionary... ." Sroczyk v. Fritz, 220 So.2d 908, 911 (Fla. 1969).
[6] "Our concern is with the decision under review as a legal precedent to the end that conflicts in the body of the law of this State will be reduced to an absolute minimum and that the law announced in the decision of the appellate courts of this State shall be uniform throughout." N & L Auto Parts Co. v. Doman, 117 So.2d 410, 412 (Fla. 1960).
[7] See, for example, Johns v. Wainwright, 253 So.2d 873 (Fla. 1971).
[8] It seems to me that we are obliged to recognize that district court judges are as fallible in their judgments as we are. As indicated by the number of rehearing petitions we receive, we do not always convince the losing side that we are correct in our decisions. If dissenting opinions from other justices are any indication, we do not always convince our colleagues. The point I would make is that judicial error in the district courts is not alone an appropriate touchstone for our jurisdiction. Only the constitutional purpose for our being warrants a review of those courts' decisions.