347 So.2d 408 (1977)
FLORIDA GREYHOUND OWNERS & BREEDERS ASSOCIATION, INC., etc., et al., Petitioners,
v.
WEST FLAGLER ASSOCIATES, LTD., etc., et al., Respondents.
No. 50128.
Supreme Court of Florida.
April 21, 1977.
Donald G. MacKenzie of MacKenzie & MacKenzie, Bruce W. Greer of Pettigrew, Arky, Freed, Stearns, Watson & Greer, for petitioners.
Herbert L. Nadeau of Patton, Kanner, Nadeau, Segal, Zeller & LaPorte, Miami, Sibley, Giblin, Levenson & Ward, Miami Beach, Aubrey V. Kendall, George W. Wright, Jr., of Mershon, Sawyer, Johnston, Dunwody & Cole, Miami, L. Robert Frank of Allen, Dell, Frank & Trinkle, Tampa, John A. Rush, Arthur T. Boone, Jacksonville, Robert L. Floyd, James D. Little of Frates, Floyd, Pearson, Stewart, Richman & Greer, Miami, for respondents.
The Petition for Writ of Certiorari reflected probable jurisdiction in this Court. We issued the Writ and have heard argument of the parties. After hearing argument and upon further consideration of the matter, we have determined that the Court is without jurisdiction. Therefore, the Writ must be and is hereby discharged and the Petition for Writ of Certiorari is dismissed.
It is so ordered.
ADKINS, BOYD and KARL, JJ., concur.
ENGLAND, J., concurs with opinion in which OVERTON, C.J., concurs.
OVERTON, C.J., concurs specially with opinion.
ENGLAND, Justice, concurring.
I tentatively voted to accept jurisdiction in this case based on an apparent conflict between the decision below and other Florida appellate decisions. I had thought from the jurisdictional filings that the decision below, which without discussion affirmed an order of the trial court dismissing one count of petitioners' amended counterclaim, was in conflict with such decisions as Napolitano v. H.L. Robertson & Assoc., Inc., 311 So.2d 757 (Fla.3d DCA 1975), and Sarasota-Manatee Airport Auth. v. Alderman, 238 So.2d 678 (Fla.2d DCA 1970).[1] These *409 cases generally involve the right to a jury trial for a counterclaim which contains both legal and equitable aspects. I now believe that the conflict I initially perceived is not present.
To find decisional conflict in this case, it was necessary to scrutinize the second count of petitioners' second amended counterclaim, which alleged a violation of the anti-trust laws, to ascertain whether it asserted a right to the alleged "legal" claim of damages. After carefully examining that pleading I could not say with any certainty that petitioners had requested damages, as opposed to an avoidance of an underlying contract. I gave petitioners the benefit of the doubt. Still, it was then necessary to determine whether the district court's affirmance of a dismissal of that counterclaim count had generated a "real and embarassing" conflict in the jurisprudence of this state.[2] After pondering this question for some time, I not only concluded that no jurisprudential conflict was present, but I further concluded that the inquiry itself was wasteful and improvident.
In AB CTC v. Morejon, 324 So.2d 625 (Fla. 1975), I wrote in dissent that the time had arrived to reconsider Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965), the divided decision of this Court (4-3) which granted us the authority to review district court decisions rendered without opinion. This case crystallizes my evolving concern and leads me to conclude that the time has indeed come to recede from Foley and its ill-conceived attempt to retain the last word on every matter brought to the Florida appellate courts.
Immediately after the district courts of appeal were created in 1957, this Court evaluated their constitutional role in a series of unanimous opinions which, in general, resulted in their characterization as courts of final rather than intermediate appellate jurisdiction.[3] In one of the earliest decisions  Ansin v. Thurston, 101 So.2d 808 (Fla. 1958)  the Court dealt with the exception to district court finality which occurs when one of their decisions is in "direct conflict" with other Florida appellate precedents, announcing that the Constitution is concerned only "with decisions as precedents as opposed to adjudications of the rights of particular litigants."[4] This fundamental evaluation of the new court system in Florida, which was made contemporaneously with the constitutional change that brought the district courts into being, was amplified in Lake v. Lake, 103 So.2d 639 (Fla. 1958), to mean that a district court's decision was not reviewable as a matter of "conflict" jurisdiction unless, with only "conceivable" exceptions, a direct conflict appeared on the face of the opinion. The Court there refused to be immersed in the record of the case in an attempt to discover some conflict which might lurk behind a district court's unexplained decision. Later that same year, in Seaboard Air Line R.R. v. Branham, 104 So.2d 356, 358 (Fla. 1958), a unanimous Court announced the procedure it would follow when asked to review decisions of the district courts for "conflict":
"The Court will examine the opinion upon which the district court of appeal decision is based, and if the opinion, on its face, shows the probable existence of a direct conflict between the two decisions, on the same point of law, the writ of certiorari may issue and, after study, may be discharged, or the decision of the district court of appeal may be quashed or modified to the end that any direct conflict between the decisions on the same point of law may be reconciled." (Emphasis in original)
*410 Despite these clear pronouncements of law, the bar of this state refused to accept the finality of district court decisions.[5] Apparently from the intensity of repeated assaults on district court decisions and a perceived need to rectify what appeared to be an occasional error in their decisions, this Court began to depart from the principles it had so carefully forged.[6] Generally, however, the Court remained resolute. See Kyle v. Kyle, 139 So.2d 885 (Fla. 1962).
With the decisional armor once chinked, however, the defense of fortress "finality" became increasingly untenable. First, a procedure was developed to pry open inscrutable decisions of the district courts to see what was really behind them. To do this the Court began to examine per curiam affirmances in the light of concurring and dissenting opinions and by that means examine the cause for injustice. In its first phases cases would be remanded to the district courts if the possibility of conflict existed, and the courts were requested to write an opinion explaining the action of the majority.[7] These later-developed opinions would then be used to determine if there existed a conflict in precedents. Within a few years this remand-for-opinion procedure became reflexive.[8] The stage was then set for a constitutional struggle between the fledgling district courts and a prevailing majority on this Court, as to whether the early promises of finality were more than mere rhetoric.
Rising to the defense of the district courts' finality in Foley v. Weaver Drugs, Inc., 172 So.2d 907 (Fla.3d DCA 1965), the Third District Court of Appeal refused to write an opinion for this Court's benefit. The Court's reaction came in a sharply divided decision (4-3) holding that jurisdiction exists here if any conflict can be found in the "record proper". Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965). Mr. Justice Thornal vigorously dissented, noting that the Foley majority never came to grips with the important constitutional considerations involved in so vast a broadening of the Court's jurisdiction. In fact, the only constitutionally relevant basis for the Foley majority was the suggestion that a per curiam affirmance without opinion creates an effective precedent in the trial court being affirmed. For so minor a premise, so significant a consequence!
In my view, the premise articulated by the Foley majority is in all events manifestly unsound. It is based on the indefensible assumption that trial judges assume that district courts issue per curiam affirmances only when they agree with the trial judge's reasons for ruling a certain way. That assumption is not only fallacious as a matter of simple logic, but it has, since Foley, been expressly rejected by the district courts themselves. Both the Second and Third District Courts of Appeal have expressly stated that trial judges can make no assumptions as to the basis on which a per curiam affirmance without opinion is rendered.[9] *411 And this Court has also stated that reasons expressed by a trial judge, although part of the "record proper", are irrelevant when we consider whether we have jurisdiction to review a district court's per curiam affirmance.[10] Since Foley, as I have attempted to point out,[11] the district courts have more and more been regarded by a majority of this Court simply as inconvenient rungs on the appellate ladder. The high cost of Foley in dollars and time to litigants and to the judiciary of Florida now demands that the majority decision there be reconsidered. My own conviction is that Foley should be scrapped, along with the stillborn traces of decisional control which were conceived in the Lake decision.[12] To my mind, there is no possible way that a district court's affirmance without opinion can create decisional disharmony in the jurisprudence of this state sufficient to warrant our attention.[13] The foul assumption which underlies any review is that the district court perpetrated an injustice which it could not explain away in an opinion. I refuse to indulge that assumption.
An honest analysis by my colleagues would compel them to admit that decisional conflict in this class of cases exists today solely on the grounds that we say it does.[14] This is, of course, contrary to our recognition that the reasons for the district courts' decisions in such cases are not capable of being discovered. The only rationale for our continued search of a basis for review in non-opinion decisions, then, is an unarticulated notion that we should, when necessary, give "justice" not provided by the lower courts. That notion is simply not good enough for me since the Constitution was amended to assign that responsibility to the district courts.[15]
Even if I am wrong in my premise that an affirmance without opinion doesn't constitute a "precedent", I would still contend *412 that the need to "harmonize" such a precedent with other decisions is too miniscule to require our intercession. A precedent so limited simply does not create disharmony in the general law of the state. Similar situations occur whenever a losing litigant fails to take an erroneous trial court decision to the district court or an erroneous district court decision to us. In those cases future litigants are affected by any propensity of the trial judge or the appellate court to follow its erroneous "precedent", yet the system survives. That is because those cases have no lasting effect on our general jurisprudence. For the same reason, unexplained district court decisions have only a limited potential effect throughout the system.
It has been suggested that our effort to review all district court decisions has contributed to an "intermediate court philosophy" in those courts.[16] If true, that phenomenon is more damaging to our entire system of justice than the occasional miscarriage of justice which this Court attempts to rectify.[17] The district courts will never be final in the areas reserved to them unless we acknowledge that they are and treat them that way. By its continual intrusion into the constitutional domain of the district courts, this Court has come perilously close to making us a court of select errors. I would cast out the devil which caused this perversion of our judicial system, and overrule Foley.
A final thought seems appropriate in light of the impending convocation of the 1977 Constitution Revision Commission.[18] A majority of this Court may hold the view that district court decisions without opinion are precedents, and that the Constitution imposes on us an obligation, as opposed to a right, to harmonize all conflicts which are detectable among the four judicial districts of the state.[19] If that be so, then I commend to the Commission the abolition of our conflict jurisdiction, as well as the other enumerated classes of discretionary review,[20] in favor of the federal model which tolerates conflicts among the eleven judicial circuits of the nation and gives the United States Supreme Court complete and unfettered discretion to determine when uniformity is not essential.[21]
OVERTON, C.J., concurs.
OVERTON, Chief Justice, concurring specially.
I concur with Justice England that the time has come to recede from Foley v. Weaver Drugs, Inc., 177 So.2d 221 (Fla. 1965). This Court does not have sufficient time to give deliberative consideration to the second appeals that are being filed here under the Foley doctrine. I fully agree that this Court's jurisdiction is restricted to decisional conflicts, as expressed by Mr. Justice Thornal in his dissent in Foley, supra.
NOTES
[1] Petitioners' jurisdictional filings suggested direct decisional conflict on two other issues of law, but the district court's decision on these points did not create an apparent disharmony in the law.
[2] Ansin v. Thurston, 101 So.2d 808 (Fla. 1958).
[3] Ansin v. Thurston, 101 So.2d 808 (Fla. 1958); Lake v. Lake, 103 So.2d 639 (Fla. 1958); Karlin v. City of Miami Beach, 113 So.2d 551 (Fla. 1959). See also Kyle v. Kyle, 139 So.2d 885 (Fla. 1962).
[4] 101 So.2d at 811.
[5] "Since [the district courts were created] we have many times announced that the jurisdiction of this court was, as of that date, circumscribed by the specific limitations stipulated in the Constitution. Shortly after amended Article V became effective we thought that we detected a sort of prodding process whereby repeated efforts were made to induce this court to break down the barriers which separated our jurisdiction from that of the several Courts of Appeal... . We have resisted these assaults against the finality of decisions of the Courts of Appeal in all of those cases where such decisions were entitled to be accorded finality." Karlin v. City of Miami Beach, 113 So.2d 551, 552 (Fla. 1959).
[6] For example, a divided court (4-3) in Sunad, Inc. v. City of Sarasota, 122 So.2d 611 (Fla. 1960), held that conflict with dictum in a forty year old case served to give jurisdiction, although there was no discussion as to how the dictum had become precedential or why the "conflict" fit within the policy framework that had just been formulated.
[7] See Rosenthal v. Scott, 131 So.2d 480 (Fla. 1961), deciding by a divided court (5-2) to request an opinion on a per curiam reversal.
[8] See, for example, Home Development Co. of St. Petersburg, Inc. v. Bursani, 168 So.2d 131 (Fla. 1964); Young Spring & Wire Corp. v. Smith, 168 So.2d 540 (Fla. 1964); Fontainebleau Hotel Corp. v. Forty-five Twenty-five, Inc., 168 So.2d 317 (Fla. 1964).
[9] In Acme Specialty Corp. v. City of Miami, 292 So.2d 379, 380 (Fla.3d DCA 1974), the court stated that while

"sufficient to support a plea of res judicata as between the original parties, such per curiam affirmance opinion does not stand for any general pronouncement of principles of law that might have been urged by the parties in their pleadings and briefs."
The Second District Court of Appeal had earlier reached the same conclusion in Schooley v. Judd, 149 So.2d 587, 590 (Fla.2d DCA), rev'd on other grounds, 158 So.2d 514 (Fla. 1963), stating that
"such a decision does not establish any point of law; and there is no presumption that the affirmance was on the merits."
[10] In State ex rel. Ranalli v. Johnson, 277 So.2d 24, 25 (Fla. 1973), Mr. Justice Adkins said that

"... reasons given by the trial judge are merely surplusage unless relied upon specifically by the District Court. It is elementary that the statements of the trial judge cannot be a basis for conflict jurisdiction before this Court, as our jurisdiction requires a decision of a District Court of Appeal which is in conflict with a decision of this Court or of another District Court." (emphasis in the original)
[11] Williams v. State, 340 So.2d 113, 116 (Fla. 1976) (dissent); City of Jacksonville v. Florida Nat'l Bank, 339 So.2d 632 (Fla. 1976) (concurrence); National Airlines v. Edwards, 336 So.2d 545, 547 (Fla. 1976) (dissent); Golden Loaf Bakery, Inc. v. Charles W. Rex Constr. Co., 334 So.2d 585, 586 (Fla. 1976) (concurrence); Carter v. State, 331 So.2d 293, 294 (Fla. 1976) (concurrence); Cummings v. Cummings, 330 So.2d 134, 137 (Fla. 1976) (dissent); Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10, 18 (Fla. 1976) (dissent); Hunt v. Seaboard Coastline R.R., 327 So.2d 193, 196 (Fla. 1976) (dissent); State v. Embry, 322 So.2d 515, 518 (Fla. 1975) (dissent).
[12] Lake v. Lake, 103 So.2d 639 (Fla. 1958).
[13] We have already held that certiorari denials without opinion are non-precedential and cannot be reviewed by this Court on the basis of a "conflict". Mystan Marine, Inc. v. Harrington, 339 So.2d 200 (Fla. 1976).
[14] I am not the first to suggest this thesis. See Gibson v. Maloney, 231 So.2d 823, 832-33 (Fla. 1970) (dissenting opinion of Thornal, J.).
[15] The role of intermediate and highest appellate courts is functionally different. There is extensive literature which describes the differences. A most recent monograph by the American Bar Foundation, which summarizes the prevailing views of the distinction, is Leflar, Internal Operating Procedures of Appellate Courts, 63-65 (1976). Separate judicial training courses have even been established in recognition of the differences.
[16] Comment, The Erosion of Final Jurisdiction In Florida's District Courts of Appeal, 21 U.Fla. L.Rev. 375 (1969).
[17] In his concurrence with the majority in Foley, Mr. Justice Drew demonstrated that at least 99% of all district court decisions remain undisturbed, even after review here.
[18] See, In re Advisory Opinion to the Governor, Request of November 19, 1976 (Constitution Revision Commission), filed February 15, 1977, 343 So.2d 17 (Fla.).
[19] Personally, I cannot accept this view. The Constitution says that we "may" review cases in direct conflict, not that we "must". Section 3(b) of Article V is very clear as to which aspects of our jurisdiction are mandatory and which discretionary.
[20] Art. V, § 3(b)(3), Fla. Const.
[21] Art. III, § 2, U.S.Const.; 28 U.S.C. § 1254 (1970).