201 So.2d 70 (1967)
Max MODLIN, Husband and Surviving Spouse of Celia Modlin, Deceased, Petitioner,
v.
The CITY OF MIAMI BEACH, a Municipal Corporation, Respondent.
No. 34865.
Supreme Court of Florida.
April 28, 1967.
Rehearing Denied June 12, 1967.
*72 Nichols, Gaither, Beckham, Colson & Spence, Robert Orseck and Alan R. Schwartz, Miami, for petitioner.
West, Feder & Goldman, Miami, for respondent.
O'CONNELL, Justice.
The District Court of Appeal, Third District, has certified its decision, Modlin v. Washington Ave. Food Center, reported at 178 So.2d 596 as involving a question of great public interest. We agree that the question involved is of great public interest. We also agree with the conclusion reached by the district court, though we reach this result by different reasoning than apparently prevailed there.
Petitioner's wife was crushed to death by an overhead storage mezzanine which collapsed while she was shopping in a retail store. Petitioner instituted this action to recover for her wrongful death, naming as defendants the owner of the building, the contractor who had constructed the mezzanine some five years previously, and the respondent city. The complaint against this city alleged the negligent performance of an inspection of construction in progress undertaken by it, with the resulting failure to discover the defect that eventually caused the collapse of the mezzanine. The trial judge assumed that there were sufficient facts upon which a jury could find that the city inspector had been negligent in his inspection, but nevertheless granted summary judgments in favor of the city and the owner of the building.
On appeal, the District Court of Appeal, Third District, reversed the summary judgment that had been awarded to the owner, but affirmed that granted to the city. Only that portion of the decision relating to the question of the city's liability was included in the district court's certification, and our decision herein will be similarly limited.
The district court, the petitioner, and the respondent all argue from their reading of our decision in Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, 60 A.L.R.2d 1193. It follows that our decision and opinion in that case must provide the starting point for our discussion. The appellant in Hargrove sought damages from the city for the negligence of its jailor in leaving the jail unattended over night, with the result that her husband, who was incarcerated during helpless intoxication, was suffocated by smoke which filled the cell during the night. Our specific holding in the Hargrove case was contained in the following excerpt:
"We therefore now recede from our prior decisions which hold that a municipal corporation is immune from liability for the torts of police officers. Affirmatively we hold that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior."
The foregoing positive holding of the Hargrove case was immediately followed by this caveat, which is equally important here:
"We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1953, 65 So.2d 54, 37 A.L.R.2d 691."
The district court obviously concluded that the municipal activity here involved fell *73 within the Hargrove caveat. Said the court:
"The enactment of regulations requiring buildings of a reasonably safe construction is certainly an exercise of the municipality's legislative powers. As indicated by the Hargrove decision, the enforcement of these regulations is an exercise of the legislative, judicial, quasi-legislative, or quasi-judicial function. We conclude that a failure to inspect, or a negligent inspection, is part of the enforcement process."
The respondent, whose position was adopted by the court below, also bases his argument in support of the district court's opinion on the above quoted dictum in Hargrove. Respondent argues convincingly that if the examination of building plans, which underlies a grant or denial of a building permit, comes within the area of immunity, surely the physical examination of the building itself, which underlies the issuance or denial of a certificate of occupancy, does also.
However, reasonable though respondent's reliance on the Hargrove dictum may have been, we are forced to hold that it is nonetheless misplaced. The district court's opinion recognized what is really quite apparent  that both the issuance of building permits and the subsequent inspection of construction in progress constitute enforcement of the building code. However, since enforcement is typically the task of the executive, it can hardly be viewed as falling within the area of municipal tort immunity reserved by the Hargrove caveat, i.e., judicial, quasi-judicial, legislative and quasi-legislative functions.
Inasmuch as the basis of the suit in Akin v. City of Miami, Fla. 1953, 65 So.2d 54, was the refusal of the city to issue a building permit, a part of the enforcement process, we now detect that our citation of Akin as illustrating the kind of municipal function that would continue to fall within the immunity was not proper. It led the district court in this case to give an improper interpretation to the Hargrove decision. In an effort to correct our error and the resulting confusion, we deem it advisable to attempt to define more clearly the boundary of remaining municipal tort immunity. As noted above, the Hargrove decision specifically reserved municipal tort immunity in the exercise of legislative, judicial, quasi-legislative, and quasi-judicial functions. Because private persons and corporations do not exercise legislative or judicial functions, this means that the tort liability of municipal corporations may now be equated with that of private corporations.
The Hargrove specification of the legislative and judicial functions as constituting the area of continuing immunity obviously implies that the performance of the executive or administrative function will constitute the area of potential liability. Therefore, what is most needed is a definition of the distinction between legislative and judicial functions, on the one hand, and executive (or administrative) functions, on the other, which will assist in determining whether particular functions fall on one side or the other of the boundary line between immunity and liability.
The distinction between legislative action, on the one hand, and executive and judicial action, on the other, is not difficult to define. It is sufficient for present purposes to say that the former is typically prospective and nondiscriminatory, whereas the latter operate retroactively and discriminatorily. In other words, legislative action prescribes a general rule for future operation, whereas judicial and executive action is typically concerned with applying the general rule to specific situations or persons.
The distinction between judicial and executive action is rather more subtle and therefore more difficult to define. However, we find guidance here in prior decisions, especially those relating to the availability of common law certiorari for the review of administrative action. Since common *74 law certiorari is appropriate to the review of judicial or quasi-judicial action, but not of legislative or executive (or administrative) action, it was necessary to make this distinction in those cases.
In West Flagler Amusement Co. v. State Racing Commission, 122 Fla. 222, 165 So. 64, the question was whether an order of the commission revoking a permit and license to conduct dog races on the ground of alleged non-payment of fees was reviewable by certiorari. Although the court's discussion focussed on the distinction between quasi-legislative and quasi-judicial functions, the opinion did enunciate a definition of the judicial function that can be applied to the question under discussion. Said the court,
"[T]he test of the quasi judicial function [is] whether or not the statutory tribunal had exercised a statutory power given it to make a decision having a judicial character or attribute and consequent upon some notice or hearing provided to be had before it as a condition for the rendition of the particular decision made."
In DeGroot v. Sheffield, Fla. 1957, 95 So.2d 912, this court was faced with the task of distinguishing between executive and judicial or quasi-judicial power and action. We therefore explained that a power authorized to be exercised on the personal judgment of the acting authority is purely executive, but that where notice and hearing are required and action is based upon the showing made at the hearing the action is judicial or quasi-judicial.
In Bloomfield v. Mayo, Fla.App. 1960, 119 So.2d 417, the District Court of Appeal, First District, was confronted with the question whether an order of the commissioner of agriculture denying an application for registration of a pesticide was reviewable by certiorari. It concluded:
"It thus appears that before an administrative order may be considered quasi-judicial in character and therefore subject to review by certiorari, the statute authorizing the entry of such an order must also require that the administrative agency give due notice of a hearing to be held on the question to be considered, and provide a fair opportunity to be heard in a proceeding in which the party affected is accorded the basic requirements of due process of law."
It appears, therefore, that although the end-product of executive and judicial discretion  i.e., the application of general rules to specific situations or persons  is substantially identical, they may nevertheless be distinguished according to the respective procedures required. If the affected party is entitled by law to the essentially judicial procedures of notice and hearing, and to have the action taken based upon the showing made at the hearing, the activity is judicial in nature. If such activity occurs other than in a court of law, we refer to it as quasi-judicial.
This definition of quasi-judicial activity finds reasonable application in the context of the present discussion, for this is the result reached: The individual is protected against the wrongful exercise of both executive and quasi-judicial power by municipal authorities. In the case of executive or administrative activity, his protection takes the form of municipal liability in tort; in the case of quasi-judicial activity, his protection lies in the formal requirements of notice and hearing and in appropriate judicial review by a court. DeGroot v. Sheffield, supra.
Returning now to the merits of the case at hand, it follows that if the respondent city is to escape liability, it will have to be other than by the path of municipal tort immunity. The Hargrove holding was to the effect that henceforth municipal corporations would be liable for the torts of their officers and employees on the principle of respondeat superior. Since it does not appear that the respondent city is being charged with any negligence other than that of the building inspector, it follows that we *75 must now inquire whether the inspector would have been liable in tort in the circumstances of this case. See 21 Fla.Jur., "Master and Servant," Sec. 76. To the extent that the city may be held vicariously liable for the negligence of its inspector, it is of course entitled to any defenses that would have been available to him. See City of Hialeah v. Hutchins, Fla.App. 1964, 166 So.2d 607.
Our decision in Hargrove related only to the tort liability of muncipal corporations and did not purport to affect in any way the question of the tort liability of public officers, which is a related but distinct question. Actually, as we shall see, the tort liability of a public official is not in all circumstances identical with that of a private individual. We perceive at least one circumstance of the instant case which would preclude holding the inspector liable for his allegedly negligent inspection. The same circumstance therefore precludes holding the city liable.
It is a well recognized principle of tort law that a fundamental element of actionable negligence is the existence of a duty owed by the person charged with negligence to the person injured. 23 Fla.Jur., "Negligence," Sec. 10. However, there is also a doctrine of respectable lineage and compelling logic that holds that this duty must be something more than the duty that a public officer owes to the public generally. Mechem, Public Offices and Officers (1890), Secs. 598, 672, 673, and 674; 43 Am. Jur., "Public Officers," Secs. 272 and 279; 27 Fla.Jur., "Public Officers," Sec. 120; 67 C.J.S. Officers § 127(b); First National Bank of Key West v. Filer, 1933, 107 Fla. 526, 145 So. 204, 87 A.L.R. 267; Larson v. Marsh, 1944, 144 Neb. 644, 14 N.W.2d 189. Mechem states the rule as follows:
"Sec. 598. * * * public officers, in respect of the person or persons to whom their duty is owing, are divided into two classes,  those whose duty is owing solely to the public, and those whose duty is owing in some degree to individuals. The first question for determination, therefore, in considering the liability of a public officer to private action is whether that officer owes any duty to the individual complaining. If he does not, then the individual has no right of action, even though he may have been injured by the action or non-action of the officer. The remedy in such a case must be by public prosecution.
"* * *
"Sec. 672. * * * So it is immaterial that the duty is one primarily imposed upon public grounds and therefore a duty owing primarily to the public, if, notwithstanding, the individual has in it a distinctive and direct interest and the legal right to require its performance; the right of action springs from the fact that the private individual receives a special and peculiar injury from the neglect in performance against which it was in part the purpose of the law to protect him.
"Sec. 673. * * * But, as has been seen, where the duty is one owing solely to the public, no liability for its non-performance is incurred to the individual however much he may be injured.
"Sec. 674. * * * It is largely a restatement of the same rule to say that the individual suing must show that he has suffered an injury from the breach of a duty owing to himself. It is not enough that he has sustained an injury, or that the officer has violated a duty owing to some one; but the plaintiff must show that these two things concur: that he has sustained a special and peculiar injury, and that it results from a breach of duty which the officer owed to him."
In First National Bank of Key West v. Filer, supra, this court held that members of a board of public instruction did owe to a holder of notes issued by the board the duty of complying with relevant statutory procedures in their issuance. However, the *76 controlling point of law was stated as follows:
"[I]t is well settled that, where the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, the officer will become liable to such individual for any injury which he may proximately sustain in consequence of the failure or neglect of the officer either to perform the duty at all, or to perform it properly. In such a case the officer is liable as well for nonfeasance as for misfeasance or malfeasance."
It is evident that under this principle the respondent city's inspector would not have been personally liable to Mrs. Modlin for damages resulting from the negligent performance of his duties. At the time he allegedly negligently performed the inspection, he owed no duty to Mrs. Modlin in any way different from that owed to any other member of the public. Therefore, the city is not liable under the rule of respondeat superior.
We believe there are also strong arguments on grounds of public policy for adhering to the rule under discussion. After all, only public officers are typically placed in the position of owing a duty of care to the public generally. Moreover, we do not perceive that the rule applied here would have disturbed any of the subsequent cases holding municipalities liable under the rule of the Hargrove decision. We do not have any difficulty in placing a duty of care on a municipality that undertakes the manual operation of a railroad crossing signal toward a motorist attempting to negotiate that crossing, Hewitt v. Venable, Fla.App. 1959, 109 So.2d 185, or in placing on police officers a duty not to deprive those with whom they come in contact of their constitutional rights of privacy, integrity of person, and so forth, Thompson v. City of Jacksonville, Fla.App. 1961, 130 So.2d 105; Simpson v. City of Miami, Fla.App. 1963, 155 So.2d 829, cert. discharged, 172 So.2d 435; Fisher v. City of Miami, Fla.App. 1964, 160 So.2d 57; City of Hialeah v. Hutchins, Fla.App. 1964, 166 So.2d 607; Shipp v. City of Miami, Fla. App. 1963, 172 So.2d 618; Evanoff v. City of St. Petersburg, Fla.App. 1966, 186 So.2d 68.
We do not attempt to grapple with the question, much-litigated in other jurisdictions, but apparently not in Florida, whether public officers are not immune from tort liability for injury resulting from their discretionary acts. See K.C. Davis, "Administrative Officers' Tort Liability," 55 Mich.L.Rev. 201 (1956).
Since we agree with the conclusion reached by the district court of appeal, the writ is discharged.
It is so ordered.
THOMAS, ERVIN and BARNS (Retired), JJ., concur.
THORNAL, C.J., agrees to conclusion.
ROBERTS and CALDWELL, JJ., dissent.