339 So.2d 632 (1976)
The CITY OF JACKSONVILLE, Florida, Etc., et al., Petitioners,
v.
FLORIDA FIRST NATIONAL BANK OF JACKSONVILLE, Etc., Respondent.
Nos. 47392, 47393.
Supreme Court of Florida.
November 12, 1976.
Marion R. Shepard of Mathews, Osborne, Ehrlich, McNatt, Gobelman & Cobb, Jacksonville, for petitioners.
William C. Gentry and John A. Devault, III, of Bedell, Bedell, Dittmar & Zehmer, Jacksonville, for respondent.
PER CURIAM.
The Writ of Certiorari having issued and the Court having examined the record and heard argument of counsel, it is now of the opinion that it is without jurisdiction and that the writ was improvidently issued. Therefore, the writ must be and is hereby discharged, and the Petition for Writ of Certiorari is dismissed.
It is so ordered.
OVERTON, C.J., and ROBERTS, ADKINS and SUNDBERG, JJ., concur.
ENGLAND, J., concurs in judgment discharging writ of certiorari with an opinion, with which OVERTON, C.J., and SUNDBERG, J., concur.
BOYD, J., dissents with an opinion.
ENGLAND, Justice (concurring).
The Florida First National Bank of Jacksonville, in its capacity as guardian of Ernest John Dobbert, III and Honore Elizabeth Dobbert, filed separate suits against the City of Jacksonville for damages resulting from the City's alleged negligence in failing to take measures which would have protected the children from abuse at the hands of their father. After the suits were consolidated, the trial court dismissed both for failure to state a cause of action. On appeal the First District Court of Appeal reversed that judgment, concluding that *633 the allegations of the amended complaints state a cause of action,[1] after which a petition for a writ of certiorari was filed here.
The issue in the cause is whether the City of Jacksonville may be held liable for the torts of its employees as alleged in the amended complaints of the Bank. These complaints alleged that on several occasions the Jacksonville police received and responded to reports that Ernest Dobbert, the children's father, was abusing and neglecting his children, and that the Jacksonville police failed to use reasonable care in the special duty undertaken in the children's behalf:
"a. in failing to heed or give credence to the numerous reliable reports that Dobbert had been abusing ... the children;
"b. in failing to make a proper investigation and examination of ... the ... children;
"c. in failing to take appropriate measures to determine whether the reported abuses had, in fact, occurred;
"d. in failing to make a report of each investigation;
"e. in failing to file a report of each investigation with the juvenile court prior to July 1, 1971, and with the State of Florida Department of Health and Rehabilitative Services pursuant to Florida Statutes § 828.041 subsequent to July 1, 1971;
"f. in failing to protect [the children] from further abuse by taking [them] into immediate custody as established procedure required when a proper examination would have revealed that [they] had been abused and mistreated; and
"g. in failing to make appropriate inquiry into Dobbert's prior criminal record, which record was readily available to investigating officers and which would have disclosed Dobbert's established propensities for engaging in child abuse."
The decision of the district court is alleged to be in conflict with a number of other Florida appellate decisions dealing with the scope and nature of municipal tort liability, principal among which are Wong v. City of Miami, 237 So.2d 132 (Fla. 1970); Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967), and Evett v. City of Inverness, 224 So.2d 365 (Fla.2d DCA 1969). Were the conflict "direct", of course, we would have jurisdiction.[2] It is not, however, and for that reason we are compelled to discharge the writ we tentatively issued.
Years ago this Court identified two basic forms of decisional conflict which properly trigger the exercise of our jurisdiction under what is now Article V, Section 3(b)(3) of the Florida Constitution. In Nielsen v. City of Sarasota, 117 So.2d 731, 734 (Fla. 1960), the court unanimously held that alleged conflict may exist either (1) where an announced rule of law conflicts with other appellate expressions of law, or (2) where a rule of law is applied to produce a different result in a case which involves "substantially the same controlling facts as a prior case."[3] In this case petitioners do not suggest that the district court announced a different rule of law in holding for the respondent-Bank. They suggest, rather, that the appropriate rules governing municipal liability were applied to produce a result different from prior decisions on substantially the same controlling facts.
As the district court's careful opinion shows, however, the facts in this case are so disparate from any other case which has ever considered the scope of municipal liability that the requisite factual similarity is wholly absent. Merely to mention some of the controlling facts here (as alleged in the complaint) is to highlight the differences:
(1) In this case a state statute directed procedures for the detection and prevention of child abuse. The Jacksonville police failed or refused to comply with them, with *634 the consequence that the appropriate state agency never had the opportunity to know that the Dobbert children were in need of its services. No similar procedural default, resulting in injuries to the very persons the statute was designed to protect, occurred in the decisions cited for conflict jurisdiction.
(2) Jacksonville policemen actually contacted and superficially examined the Dobbert children on the basis of child abuse complaints. No such direct and personal contact with the persons injured was involved in the Wong, Modlin, and Evett cases.
(3) Mrs. Dobbert was in a Jacksonville jail and prison farm, and obviously unable to protect her children from abuse. She told responsible Jacksonville officials of her concerns, but the Jacksonville bureaucracy proved ineffective to deal with the problem. As a consequence, the very injuries of which she (and also her neighbors) warned were in fact inflicted. Nothing in Wong, Modlin or Evett approaches this factual setting.
(4) The Jacksonville police and its investigators failed or refused to make written reports to their superiors, although internal procedures required that they do so. The injuries suffered were precisely those which might have been prevented had there been reports on file as to the particular individuals who suffered repetitive and cumulative injuries. Again the decisions cited for "conflict" bear no factual resemblance to this case.
The absence of a jurisdictional foundation for our review in this case is not a mere technicality. It is a matter of constitutional significance. In this case, the First District Court of Appeal did a thorough and thoughtful job of analyzing Florida case law in order to apply it to the facts of a particular controversy before it. This is precisely what the framers of Article V and the people of Florida expect district court judges to do. A very strong showing of Nielsen-type error is required before we find authority to supplant the judgment of those constitutional officers with ours. Whatever the current view of the members of this Court on the scope of municipal liability, we may not arbitrarily jump the jurisdictional requirements of the Constitution in order to decide this case on its merits. We must, therefore, discharge the writ as having been improvidently granted.
OVERTON, C.J., and SUNDBERG, J., concur.
BOYD, Justice (dissenting).
I must dissent because it is my opinion that the majority fails to follow the case law of this State as it has existed until now.
The landmark Florida decision which first lifted the veil of municipal immunity from liability for the torts of its employees is Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957). Suit was brought by a widow whose complaint alleged that her husband, while a prisoner in the municipal jail, died from smoke inhalation when the jail caught fire and was negligently left unattended by municipal employees. Her complaint was dismissed and this Court reversed. While the municipality remained immune from liability for the torts of its employees committed through a judicial or legislative function, this Court imposed liability when the tort of the municipal employee was committed through an executive function and the injured party suffered direct and personal injury proximately caused by the negligence of the municipal employee within the scope of his duty, provided that the damage suffered was special, personal damage not common to the community.
Municipal immunity from tort liability for the negligence of employees was further explained in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967). A woman was killed while shopping in a retail store when a mezzanine collapsed. An action for wrongful death was instituted by her spouse alleging that a municipal building inspector negligently failed to discover the defect which caused the mezzanine's collapse. The trial judge assumed there were sufficient facts to establish negligence, but *635 nevertheless granted summary judgment in favor of the City. The District Court of Appeal affirmed on the basis that enforcement of building regulations is a legislative, judicial, quasi-legislative, or quasi-judicial function and, as such, falls within the Hargrove caveat which continued municipal immunity from tort liability for such functions. The question was certified to this Court which affirmed for reasons different from those of the District Court. Executive, legislative, judicial, quasi-legislative and quasi-judicial functions were defined and it was determined that, since enforcement is typically an executive task, it did not fall within municipal immunity from tort liability reserved by the Hargrove caveat. Stating the fundamental principle that an element of negligence is the existence of a duty owed by the person charged with negligence to the person injured, and citing the doctrine that in order to find a public officer negligent the duty must be something more than the duty that a public officer owes to the public generally, this Court found that the building inspector could not have been liable for damages resulting from the decedent's death, since the duty owed her was not different from the duty he owed the public generally. Since defenses available to employees are available to employers when sued on the theory of respondeat superior, this Court held that cities are immune from liability for negligence of their employees unless the duty owed is a special one owed to the injured party as opposed to a duty owed to the public generally. The duty owed by the building inspector was to the public generally, rather than to the decedent specially. Consequently the District Court's affirmance of the summary judgment was affirmed. This Court left open the question of whether public officers are immune from tort liability for injury resulting from their discretionary acts.
That question was answered in Wong v. City of Miami, 237 So.2d 132 (Fla. 1970). A rally was scheduled in Miami on August 7, 1968 while the Republican National Convention was being held at Miami Beach. Merchants bordering the rally area requested police protection. Police officers were stationed in the vicinity, but were removed by direct order of the Mayor, and the removal was confirmed by an order issued by the County Sheriff. Civil disorder ensued and by the time police gained control the merchants had sustained damages which were alleged to exceed $100,000. Suit was brought against the City and the County. By order of the Circuit Court, the suit was dismissed against the City for failure to state a cause of action. The Circuit Court's order was affirmed by the District Court of Appeal, Third District, and the question certified to this Court. In agreeing with the decision of the District Court majority, this Court recognized that the duty of police protection in the case was one owed to the public generally, even though the City, at the request of the merchants, had stationed the police in the vicinity, and then with knowledge that the assembly might have developed into a riot, withdrew police protection. Despite the fact that police had been dispatched to the scene to protect those in the vicinity of the rally, this Court held the duty to be a general one owed to the public rather than a special one owed to the injured parties. This Court went further to discuss whether the exercise of discretion in matters of police protection should be considered "negligence."
"... But we are somewhat disturbed with what we perceived to be inferences appearing in the majority opinion and in the brief of the County that the removal of the officers was a negligent act and that respondents are shielded from liability merely because sovereign immunity has not been relaxed sufficiently by prior decisions.
* * * * * *
"... The sovereign authorities ought to be left free to exercize their discretion and choose the tactics deemed appropriate without worry over possible allegations of negligence." Wong, supra, 237 So.2d 132, 134.
In Evett v. City of Inverness, 224 So.2d 365 (Fla.2d DCA 1969), the District Court of *636 Appeal, Second District, seemed to anticipate Wong by affirming the dismissal of a complaint against a police officer for negligence committed through a discretionary judgment, although the court based its affirmance on the lack of a special duty owed the injured party rather than because of the officer's exercise of discretion. Just as in Evett, I believe complaints against police officers for negligence committed through an exercise of discretion are properly dismissed under the decisions of this Court.
I would adhere to our holding in Wong. Local governments must be free from negligence suits brought because of a municipal employees' mistaken discretionary judgment. Were it otherwise, we might be faced with a rash of municipal government bankruptcies, and in order to stave off local bankruptcy of epidemic proportions, we would be forced to close the door to all municipal tort liability, including the limited liability of municipalities for the torts of employees which the law of this State now permits.
The majority demonstrates compassion but fails to follow Florida law. Governments cannot right all wrongs, prevent all injustice, or solve all the problems of mankind. The courthouse doors are now open to suits for countless claims by those who feel they suffer by failure of the governments to prevent their injuries.
This could lead to bankruptcy of local governments and cause more harm than good.
I must dissent.
NOTES
[1] Florida First Nat'l Bank v. Jacksonville, 310 So.2d 19 (Fla.1st DCA 1975).
[2] Art. V, § 3(b)(3), Fla. Const.
[3] See also, among other cases adhering to this formulation, Kyle v. Kyle, 139 So.2d 885 (Fla. 1962), and Adams v. Seaboard Coast Line RR, 296 So.2d 1 (Fla. 1974).