453 So.2d 70 (1984)
Laura HUHN, Appellant,
v.
DIXIE INSURANCE COMPANY, Etc.; the Insurance Company of North America; City of Daytona Beach, Etc.; Timmy Lynn Collins and Elaine Black, a/K/a Remonie Black, Appellees.
No. 82-1150.
District Court of Appeal of Florida, Fifth District.
May 17, 1984.
Mark A. Olewinski and Dennis P. Dore of Haas, Boehm, Brown & Rigdon, P.A., Daytona Beach, for appellant.
Alfred A. Green, Jr., Daytona Beach, for appellees City of Daytona Beach and Ins. Com. of North America.
No appearance for appellees Collins and Black.
ORFINGER, Chief Judge.
Appellant Laura Huhn, plaintiff below, seeks reversal of an order of the trial judge granting the city's motion and dismissing her action against the City of Daytona Beach for damages sustained when she was struck by an allegedly intoxicated driver while walking along the Ocean Beach in Daytona Beach. We reverse.
We are called on to determine whether the City of Daytona Beach should enjoy sovereign immunity for the actions of its police officers who stop a visibly intoxicated driver who is operating his motor vehicle in a careless and reckless fashion, but who do not arrest or otherwise detain the *71 driver but permit him to continue operating the motor vehicle so that shortly thereafter and while still so intoxicated, he runs into and causes injury to an innocent third party. For the reasons set forth, we hold that the complaint does state a cause of action against the city under the facts presented here.
Because the instant case was decided on a motion to dismiss, for the purposes of this discussion we must assume that all well pleaded allegations of the plaintiff's complaint are true. Hylazewski v. Wet 'N Wild, Inc., 432 So.2d 1371 (Fla. 5th DCA 1983). The complaint states that on the evening of June 8, 1979 appellee Timmy Lynn Collins was negligently and carelessly driving his automobile while under the influence of alcohol. He was stopped by police officers of the City of Daytona Beach who observed "that ... Collins was operating [his] motor vehicle while intoxicated and otherwise physically unfit, due to alcohol consumption, to be operating a motor vehicle." The complaint goes on to allege that "despite such observations and knowledge on the part of the police officers, ... Collins was not detained, arrested ... or otherwise prevented from continuing to operate his motor vehicle while in an intoxicated state and shortly thereafter, at a time contemporaneous to the release of Collins by the ... officers, ... Collins while in his intoxicated state" operated his vehicle in a reckless manner on the ocean beach and struck plaintiff who was legally walking thereon. Huhn sustained extensive injuries and filed suit against appellee City of Daytona Beach, and its insurer, Insurance Company of North America.[1]
The City of Daytona Beach and its insurance company filed a motion to dismiss the complaint, stating that the city had no duty to the plaintiff any different from that owed to any member of the public and therefore it was not liable as a matter of law. As well, the motion stated that any negligent act or omission by the city in establishing when and under what circumstances motor vehicles may travel on the Atlantic Ocean Beach at Daytona Beach was a governmental decision for which the city could not be held accountable in tort. The trial court accepted the appellee's arguments and dismissed the action with prejudice as to the city and its insurer.
In order to understand why we find the trial court's decision to be in error, it is necessary to review the history of sovereign immunity in Florida. Such inquiry naturally commences with the seminal case of First National Bank v. Filer, 107 Fla. 526, 145 So. 204 (1933) in which our supreme court defined the scope of personal liability for public servants:
[W]here the law imposes upon a public officer the performance of ministerial duties in which a private individual has a special and direct interest, the officer will become liable to such individual for any injury which he may proximately sustain in consequence of the failure or neglect of the officer either to perform the duty at all, or to perform it properly. In such case the officer is liable as well for nonfeasance as for misfeasance or malfeasance. Id. at 535, 145 So. at 207.
The Filer standard suggested that the plaintiff was obligated to demonstrate that the officer was engaged in a ministerial function, and that the injury suffered at the hands of the officer was the proximate result of the failure or neglect of the officer to perform the non-discretionary duty. This standard was later refined in Hargrove v. Town of Cocoa Beach, 96 So.2d 130 (Fla. 1957). In Hargrove the plaintiff alleged that her husband was incarcerated in a town jail and that during the evening, when no guard or other attendant was on duty, the cell became filled with smoke resulting in the husband's fatal suffocation. The complaint averred that the city *72 was negligent in leaving the jail unattended and the prisoner unprotected against fire, and that such negligence caused his death. The supreme court, in analyzing the history of sovereign immunity, noted that a distinction had traditionally been made by the courts between so-called governmental functions, for which immunity was the rule, and proprietary functions, for which the municipality had been held responsible for the torts of its agents. In holding that a municipal corporation could be held liable for the torts of police officers where the individual suffers a direct, personal injury proximately caused by the negligence of a municipal employee, the Hargrove court addressed the immunity issue in this manner:
We therefore now recede from our prior decisions which hold that a municipal corporation is immune from liability for the torts of police officers. Affirmatively we hold that a municipal corporation may be held liable for the torts of police officers under the doctrine of respondeat superior. We think it advisable to protect our conclusion against any interpretation that would impose liability on the municipality in the exercise of legislative or judicial, or quasi-legislative or quasi-judicial, functions as illustrated in such cases as Elrod v. City of Daytona Beach, 132 Fla. 24, 180 So. 378, 118 A.L.R. 1049; and Akin v. City of Miami, Fla. 1953, 65 So.2d 54.
Subject to the limitations above announced, we here merely hold that when an individual suffers a direct, personal injury proximately caused by the negligence of a municipal employee while acting within the scope of his employment, the injured individual is entitled to redress for the wrong done. To support the rule we hearken back to our original Florida precedent, City of Tallahassee v. Fortune [3 Fla. 19], supra. Our judicial forebears there held that where an individual suffers a special personal damage not common to the community but proximately resulting from the negligence of the municipal corporation acting through its employees, such individual is entitled to redress.
Hargrove at 133, 134. Although the Hargrove decision eroded the traditional rule of immunity and held that an individual could recover when he directly and proximately was injured at the hands of a negligent municipal employee, acting within the scope of his employment, the opinion failed to indicate explicit distinctions between legislative and executive functions.
The shortcomings in the Hargrove analysis were recognized by the Florida supreme court in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967). The court there stated that although Hargrove specified that legislative and judicial functions would constitute the area of continued immunity, no definition was offered of the distinction between legislative and judicial functions, on the one hand, and executive or administrative functions on the other. In the aftermath of Hargrove, the courts and litigants were left without guidance to determine whether particular actions would fall on one side or the other of the boundary line between immunity and liability.
Modlin attempted to establish a new standard for liability by applying a brightline general duty/special duty test. The facts in Modlin were undisputed: the petitioner's wife was crushed to death by an overhead mezzanine which collapsed while she was shopping in a retail store. The complaint against the city alleged the negligent performance of a construction inspection with the resulting failure to discover the defect that eventually caused the collapse of the mezzanine. Although the Modlin court analyzed at length the distinction between legislative and executive actions the case hinged on the more rudimentary tort law principle of duty; the duty of the officer or employee to the injured citizen had to be something more than that owed to the public generally. Because the building inspector had no duty to Mrs. Modlin in any way different from that owed to any other member of the public, the court reasoned that the city could not be liable under the rule of respondeat *73 superior. But see Florida First National Bank v. City of Jacksonville, 310 So.2d 19 (Fla. 1st DCA 1975); writ discharged, 339 So.2d 632 (Fla. 1976).
In 1975 the Florida Legislature significantly modified the common-law standards for immunity by enacting section 768.28, Florida Statutes.[2] The statute was intended to waive sovereign immunity for liability for torts on a broad, but qualified, scale.
In Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979) the supreme court applied section 768.28 to an action against Indian River County for failure to maintain a stop sign at an intersection and for the negligent failure of the Department of Transportation to paint or replace on the pavement the word "STOP" in advance of the entrance to the intersection. The trial court dismissed the complaint and the Third District Court of Appeal affirmed.
The court analyzed the continuing viability of the Modlin "special duty" rule in the aftermath of the enactment of section 768.28 and concluded "we cannot attribute to the legislature the intent to have codified the rules of municipal sovereign immunity through enactment of section 768.28, Florida Statutes (1975) ... consequently, we conclude that Modlin and its ancestry and progeny have no continuing vitality subsequent to the effective date of section 768.28."
Having rejected the Modlin standard the supreme court was called on to formulate a new theory of sovereign immunity. As an initial consideration the court noted that although the Florida Legislature modeled section 768.28 after the Federal Tort Claims Act, the Florida statute contains no express exception for discretionary acts similar to that contained in the F.T.C.A.[3] The clear implication of such omission is that the legislature had available to it the federal act, and made a conscious decision not to provide an exception for all discretionary acts.[4] The court concluded, however, that this did not mean that every act or omission by government officials or employees may form the basis for recovery against the governmental authority involved. Rather, certain judgmental decisions of governmental authorities remain immune from judicial scrutiny. The decision states:
Hence, we are persuaded ... that even absent an express exception in section 768.28 for discretionary functions, certain policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability ... Planning level functions are generally interpreted to be those requiring basic policy decisions, while operational level functions are those that implement policy. [W]e... hold that although section 768.28 evinces the intent of our legislature to waive sovereign immunity on a broad basis, nevertheless, certain "discretionary" *74 governmental functions remain immune from tort liability. This is so because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance. [emphasis supplied].
The court concluded that the maintenance of a traffic sign at an intersection and proper maintenance of the painted letters "STOP" on the pavement of a highway were operational level activities for which liability could be found.
In recommending a case-by-case method for analyzing whether a governmental function is "planning" or "operational" level activity, Commercial Carrier adopted the test applied in Evangelical United Brethren Church v. State, 67 Wash.2d 246, 407 P.2d 440 (1965). In that case the court proposed the application of four questions: 1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective?; 2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?; 3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?; and 4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? The Evangelical opinion stated that if these preliminary questions could be clearly and unequivocally answered in the affirmative, then the challenged act could, within a reasonable degree of assurance, be classified as a discretionary governmental process and non-tortious.
In Rupp v. Bryant, 417 So.2d 658 (Fla. 1982) the court again analyzed its earlier decisions dealing with the "duty" question, and again rejected Modlin. It reviewed Commercial Carrier in the light of Filer and Hargrove, and concluded that Commercial Carrier had been correct in rejecting the overly restrictive view adopted in Modlin. The court reaffirmed its holding in Hargrove to which we have previously alluded, to the effect that when a person suffers a direct, personal injury proximately caused by the negligence of a municipal employee acting within the scope of his employment, such person has redress against the municipality for the wrong done.
We are aware of only three decisions by courts of this state which address factual situations similar to that presented in the case at bar. The first of these, Evett v. City of Inverness, 224 So.2d 365 (Fla. 2d DCA 1969) applied the Modlin special duty/general duty test. The plaintiff's husband in that case was killed when an automobile he was operating was struck by a car negligently operated by an intoxicated driver. A short time prior to the collision, a police officer of the City of Inverness stopped the intoxicated driver for speeding. At that time, the officer apparently should have been aware that the operator was intoxicated, but the driver was not detained. The appellate court held that the city's police officer could not be liable for damages resulting from his negligence because he owed no duty to plaintiff's deceased husband in any way different to that owed to any other member of the public. In view of Commercial Carrier and Rupp, we do not view this case as persuasive.
More recently, in Everton v. Willard, 426 So.2d 996 (Fla. 2d DCA 1983), our sister court analyzed the duty of municipal officers under circumstances similar to the facts sub judice while applying section 768.28 rather than the earlier Modlin test. The plaintiff in Everton was seriously injured in a two car collision in Pinellas County. The driver of the automobile in which the plaintiff was riding was killed in the accident. The driver of the second vehicle, Marian Willard, had been stopped approximately ten to twenty minutes before the accident by a Pinellas County Sheriff's Deputy. Willard had been issued a traffic *75 citation for making an improper U-turn at another intersection. Although the complaint alleged the deputy knew that Willard had been drinking, the officer did not charge the driver with a driving offense related to intoxication and Willard was permitted to continue to operate her vehicle. The plaintiff maintained that this violated the duty owed to him in particular and to the public in general. The trial court granted the county's motion to dismiss the complaint, stating that law enforcement officers must be permitted the freedom to exercise their discretion without being subject to suit in tort if their decisions in retrospect result in misfortune to innocent third parties. The appellate court affirmed, and, applying the Evangelical four-question test concluded that the proper planning and implementation of a viable system of law enforcement for any governmental unit must necessarily include the discretion of the officer on the scene to arrest or not arrest as his judgment at the time dictates. The court held that when that discretion is exercised, neither the officer nor the employing governmental entity should be held liable in tort for the consequences of the exercise of that discretion.
The Everton analysis was again applied by the same court in City of Cape Coral v. Duvall, 436 So.2d 136 (Fla. 2d DCA 1983). In that case the complaint alleged that the plaintiffs were occupants of a taxi cab struck in the rear by an automobile operated by Patrick McNally. McNally had been stopped a few hours earlier by the Cape Coral Police Department and was visibly intoxicated. The police department did not arrest McNally but rather delivered him into the custody of Atkins, a cab driver for Jack's Radio Cabs. The officers negligently failed to determine the correct whereabouts of McNally's residence and the cab company failed to deliver him to his home. The cab driver returned McNally to his car and gave him the keys. McNally drove away and shortly thereafter caused the accident and the injuries to appellees. Although the appeal raised different issues,[5] the court stated that the rationale of Everton would be adopted and would preclude relief for the appellees.
The Everton and City of Cape Coral decisions are presently under review by our supreme court. We are compelled, however, to reject the reasoning applied in those cases and hold that the City may be liable under the circumstances presented here. Our decision is rooted in a careful reading of Commercial Carrier and its progeny. The supreme court in Commercial Carrier expressly rejected the idea that the legislature intended to carve out a broad general exception for discretionary acts. Rather, the court concluded that immunity would obtain in the limited class of cases where the state, or its agencies or subdivisions, exercises "discretionary" governmental functions. The court noted that all governmental functions, no matter how seemingly ministerial, could be characterized as embracing the exercise of some discretion in the manner of their performance. This does not mean, however, that a blanket rule of immunity should apply. Rather, it is only those functions undertaken by coordinate branches of government that impact on the free exercise of the operation of government which will continue to be vested with immunity.
In deciding which of several available methods he could use to get Collins off the streets, this was not the exercise of a discretionary governmental function. Rather the officer was implementing policies established by the legislature of the *76 State of Florida for the protection of the citizens of this state. The determination of strategy and tactics for the deployment of police powers does require the exercise of discretionary governmental functions and in such cases immunity should be the rule.[6] However, a police officer who actually stops a visibly intoxicated driver can not be furthering any legitimate governmental policy when the officer decides to not enforce the law, and turns the driver loose. Collins was intoxicated and visibly unfit, because of his alcohol consumption, to be operating a motor vehicle, and the police officer who stopped him observed and knew of this condition. On the basis of this knowledge, there was no "policy-making, planning or judgmental governmental function" to be performed by the police officer. Although the police officer had some discretion in how he would handle the matter, his duty was plain (and operational)  he could not turn this drunken driver loose on the streets. An intoxicated and impaired driver on the streets is an "accident looking for a place to happen." The danger involved to everyone on the streets when an intoxicated driver is on the loose is so apparent and obvious that everyone should know it. We are not dealing with a claim of liability because of the failure of the police to apprehend a drunken driver who later causes injury to some one lawfully using the streets. Rather, we deal with a situation where the driver was stopped and his drunken and unfit condition was apparent to the officer. Under these circumstances, it can hardly be argued that the ultimate accident and injury was not foreseeable.
We are further supported in our decision by the recent case of Smith v. Department of Corrections, 432 So.2d 1338 (Fla. 1st DCA 1983). There, the complaint maintained that a prisoner was negligently reclassified from maximum to minimum custody status even though the prisoner was serving a life sentence for first degree murder. The prisoner had been on parole from a twenty year sentence for armed robbery at the time of the murder conviction. In October, 1974 he was classified as a minimum custody inmate, but escaped on the day of transfer, and was recaptured twelve days later and returned to maximum custody status. In May, 1976 he was again reclassified to minimum custody status and approximately two years later escaped and fled to Jacksonville. In the course of an armed robbery in June, 1978 he abducted and shot the plaintiff. The trial court dismissed with prejudice the plaintiff's second amended complaint based upon a finding that inmate classification was a discretionary rather than operational function. The appellate court reversed, noting that in Bellavance v. State, 390 So.2d 422 (Fla. 1st DCA 1980), the court found no immunity when a state mental hospital negligently released a violent patient who injured a third party. The Smith court stated "the fact that prison officials have some discretion in assignments of inmates does not require immunity."
Here, we find that because the complaint alleged that the police officers knew Collins to be intoxicated yet failed to detain or arrest him, there was little room for discretion which would warrant a finding of immunity. The legislature has enacted statutes designed to keep intoxicated drivers from operating motor vehicles, and it is the responsibility and duty of the police department to carry out such policies. The citizens of this state would be ill served if we were to afford police officers immunity *77 when they encounter drivers who unquestionably are impaired to the point where they cannot operate a vehicle safely, yet fail to detain or arrest such individuals or otherwise get them off the streets. At that point the police officer is merely implementing policy by enforcing the laws, and cannot be said to be exercising a discretionary governmental function. Accordingly, we hold that the complaint in this instant case stated a cause of action and the trial court erred in finding that the city could not be responsible for the acts or omissions of its police officers under these circumstances.
In so concluding, this opinion appears to be in direct conflict with Everton v. Willard, 426 So.2d 996, (Fla. 2d DCA 1983).
REVERSED and REMANDED.
DAUKSCH and FRANK D. UPCHURCH, Jr., JJ., concur.
NOTES
[1] Also named as parties to the action were Collins, his insurer, Dixie Insurance Company, and Elaine Black who was alleged to have acted as guarantor and insurer of the conduct of Timmy Lynn Collins by signing his driver's license and who owned the vehicle Collins operated. We are only concerned with the portion of the complaint directed to the city and its insurer on this appeal.
[2] Section 768.28(1), Florida Statutes (1975) reads:

In accordance with section 13, Art. X, state constitution, the state, for itself and for its agencies or subdivision, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act. Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision if a private person, would be liable to the claimant in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
[3] 28 U.S.C. §§ 1346(b), 2674 et seq. (1951).
[4] In Rupp v. Bryant, 417 So.2d 658 (Fla. 1982) the supreme court declared that acts which are discretionary are acts of governing; acts which are ministerial are not. Of significance, is the court's recognition that:

... this line is never easy to draw. Commercial Carrier, although discarding the distinction of discretionary/ministerial in the context of governmental immunity nevertheless recognized that certain "discretionary" acts were still covered by sovereign immunity, equating these acts to "planning" as opposed to "operational" actions.
Rupp, at 663, f.n. 11.
[5] The argument raised on appeal was whether the lower court erred in giving or refusing various instructions and in failing to direct verdicts on several grounds. The appellate court stated that the trial judge erred in failing to instruct the jury on Fla. Stat. § 856.011(3) (1981) which provides:

[A]ny peace officer, in lieu of incarcerating an intoxicated person for violation of subsection (1), may take or send the intoxicated person to his home or to a public or private health facility, and the law enforcement officer may take reasonable measures to ascertain the commercial transportation used for such purposes as paid for by such person in advance. Any law enforcement officers so acting shall be considered as carrying out their official duty.
[6] See Ellmer v. City of St. Petersburg, 378 So.2d 825 (Fla. 2d DCA 1979) (city's alleged failure to warn of riot conditions was but an aspect of larger responsibility providing police protection and any attempts to warn of riot conditions must involve planning with respect to how, when, and by what means it is to be accomplished; accordingly no liability found for failing to give citizens travelling on the streets appropriate warning or to quadrant off the locale). Contra, Collom v. City of St. Petersburg, 400 So.2d 507 (Fla. 2d DCA 1981) (city liable for failing to exercise due care in designing, constructing, and maintaining sewerage facilities). But see Elliott v. City of Hollywood, 399 So.2d 507 (Fla. 4th DCA 1981) (city not liable for failing to enforce an ordinance designed to prevent homeowners from growing bushes and hedges in such a manner as to interfere with the vision of motorists at an intersection).