Barry W. COKER and Harold J. Vucovich, Jr., Plaintiffs–Appellants, Cross–Appellees,

v.

Frank H. DOLLAR and Beverly Dollar, his wife, Defendants–Appellees, Cross–Appellants.

No. 87–3071.

United States Court of Appeals, Eleventh Circuit.

June 10, 1988.

James M. Weber, Beggs & Lane, Pensacola, Fla., for Coker.

Donald H. Partington, Clark, Partington, Hart, Larry, Bond & Stackhouse, Pensacola, Fla., for Vucovich.

Robert J. Emmons, Great Falls, Mont., for Frank H. and Beverly Dollar.

Before TJOFLAT and KRAVITCH, Circuit Judges, and TUTTLE, Senior Circuit Judge.

---

TJOFLAT, Circuit Judge:

## I.

In May 1978, Paul M. Jackson purchased Bayshore Apartments, an apartment complex in Pensacola, Florida, planning to convert the apartments into condominiums and then sell them. In July 1978, he sold a 30% interest in the apartment complex to Frank and Beverly Dollar, appellees here, for $450,000. At the same time, Jackson contracted with the Dollars to manage their interest in the property, promising to pay them an 11% per annum return on their investment.[1]

After completing the transaction with the Dollars, Jackson proceeded with his plan to convert the apartments into condominiums. He retained an attorney in Pensacola, T. David Mann, to prepare the legal documents for the conversion. Mann, apparently unaware that the Dollars owned a 30% interest in the apartment complex, listed Jackson as the owner in the conversion documents. Before filing the documents, however, Mann somehow found out about the Dollars' interest. He contacted Jackson, telling him that it would be costly to change the documents. To avoid having to change the documents, Jackson decided to seek some kind of an arrangement with the Dollars whereby they would assign their 30% interest back to him.

To that end, Jackson and the Dollars entered into a contract on October 31, 1979. The contract gave Jackson an option, which was exercised in the same contract, to purchase the Dollars' 30% interest by exchanging that interest for other, as of then unidentified, property to be acquired by Jackson. The contract provided that pending Jackson's acquisition of the exchange property, 30% of all net proceeds derived from Jackson's sale of the condominium units would be placed in an escrow account. If Jackson did not locate suitable exchange property within 120 days, the contract gave the Dollars a choice: either they could ex-tend the time for making the exchange, or they could terminate the contract and seize the funds in the escrow account. Simultaneously with the execution of the contract, the Dollars executed a complete assignment of their 30% interest to Jackson.[2]

Meanwhile, Jackson had entered into a contract with Barry W. Coker, one of the appellants here, pursuant to which Coker agreed to act as project manager for the condominium conversion. After Jackson executed the October 31, 1979 contract with the Dollars, he had a copy of the contract sent to Coker, with instructions to set up the escrow account provided for therein. Coker received the instructions, but misunderstood them and failed to set up the account. The Dollars were unaware of this failure, and, when 120 days had elapsed without Jackson locating suitable exchange property, they elected to extend the time for locating such property.

As of February 1980, no condominium sales had yet occurred. On February 28, 1980, Coker and Harold J. Vucovich, the other appellant here, entered into a joint venture with Jackson. Under the joint venture agreement, Jackson was to receive the first net $1,000,000 from the condominium sales, and Coker and Vucovich were to receive all proceeds in excess of that amount. In June 1980, sixty of the units were sold, and Jackson was paid out. On June 21, 1980, Jackson deeded to Coker and Vucovich the remaining units.

Throughout all this time, the Dollars remained unaware that Jackson had failed to set up an escrow account as required under the October 31, 1979 contract. When the sixty units were sold in June 1980, none of the proceeds were set aside for them. Jackson did continue to remit monthly payments to the Dollars pursuant to his management contract with them; in February 1982, however, those payments came to a halt when the corporation through which Jackson did business filed a Chapter 11 bankruptcy petition.

---

1. Jackson sold the remaining 70% interest in the apartment complex to another couple, Bernard and Edythe Hardy, and entered into a similar management contract with them.

2. The Dollars eventually brought a malpractice suit against the attorney who represented them in their various transactions with Jackson and obtained a substantial judgment.

In October 1982, Coker and Vucovich brought a quiet title action in a Florida state court, naming the Dollars as defendants. The subject matter of the action was the condominium units deeded to Coker and Vucovich by Jackson on June 21, 1980. The Dollars removed the case to federal court pursuant to 28 U.S.C. § 1441(a) (1982),[3] and filed a counterclaim containing four counts, three of which are relevant to this appeal.[4] In count I, the Dollars alleged that Coker and Vucovich, by entering into the joint venture agreement with Jackson in February 1980, had intentionally interfered with the Dollars' October 31, 1979 contract with Jackson. In count III, they alleged that Coker had injured them by negligently failing to set up the escrow account. In count IV, they alleged that Vucovich, as Coker's business partner, was liable for Coker's negligent failure to set up the account.

After a bench trial, the district court, applying Florida law, found against the Dollars on count I of the counterclaim and for them on counts III and IV.[5] The court awarded the Dollars $98,610.16 in compensatory damages and $50,000 in punitive damages. Coker appeals the finding of liability on count III, Vucovich appeals the finding of liability on count IV, and they both appeal the award of punitive damages. The Dollars cross-appeal the district court's denial of relief on count I.

## II.

We begin with Coker's appeal of the district court's finding of liability on count III. As we have already noted, that count sounds in negligence: the Dollars claim that Coker, by failing to set up the escrow

account, caused them to suffer an injury that is actionable under Florida law.

█ It is of course a basic principle of tort law that one cannot be held liable for negligence unless one is deemed to have breached some legal duty owed to the injured party. *Modlin v. City of Miami Beach*, 201 So.2d 70, 75 (Fla.1967). Here, the Dollars entered into a contract with Jackson; as part of the agreement, Jackson was to set up an escrow account. Jackson did not himself set up the account, but instructed his agent, Coker, to do it for him. That agent, Coker, did not follow these instructions, and the Dollars claim that they suffered an injury as a result. Now, there can be no question that Jackson had a contractual obligation to the Dollars to set up the escrow account. And Coker probably had an obligation to Jackson to carry out his instructions. But did Coker owe a legal duty to the Dollars such that they are now entitled to recover damages from him for his failure to set up the account?

We can assume that Coker, as Jackson's agent, had an obligation to carry out Jackson's instructions, and that the Dollars were injured by his failure to perform that obligation. The general rule, however, is that an agent is not liable for pecuniary harm to a person other than his principal that results from his failure adequately to perform his duties to his principal. Restatement (Second) of Agency §§ 352, 357. The Dollars have not directed us to any Florida case holding otherwise, and our own research has uncovered no such case.

The Dollars argue that Coker is nevertheless liable to them because he voluntarily undertook to set up the escrow account. As support for this theory, the Dollars refer us to cases holding that one who

**3.** In their removal petition, the Dollars asserted subject matter jurisdiction under 28 U.S.C. § 1332(a) (1982) (diversity of citizenship).

**4.** Count II of the counterclaim is not involved in this appeal. In that count, the Dollars requested the district court to impose a constructive trust in their favor on the condominium units deeded to Coker and Vucovich on June 21, 1980. Coker and Vucovich moved the district court pursuant to Fed.R.Civ.P. 56 for summary judgment on that count, and the court granted the motion.

Finding that Coker and Vucovich no longer held title to the condominium units, the court held that it had no power to impose a constructive trust, since the third persons who held title were not parties to the lawsuit. The Dollars do not appeal this ruling.

**5.** The district court dismissed Coker and Vucovich's quiet title complaint as moot, finding that Coker and Vucovich no longer held title to the disputed condominium units.

voluntarily attempts to rescue another or otherwise perform a service for another assumes a duty to exercise due care in performing the rescue or service. *See, e.g., Barfield v. Langley,* 432 So.2d 748, 749 (Fla.Dist.Ct.App.1983); *Kaufman v. A–1 Bus Lines, Inc.,* 416 So.2d 863, 864 (Fla. Dist.Ct.App.1982). One problem with applying this principle to the facts of this case is that the district court found that Coker never actually took any action to set up the escrow account. Coker's failure to read carefully the copy of the October 31, 1979 contract sent him by Jackson is irrelevant; the fact remains that he never actually did *anything* in connection with any escrow account. Thus, the Dollars' reliance on the "rescue" cases, which is questionable in any event,[6] is clearly misplaced under the facts of this case.[7]

We therefore conclude that the district court erred in holding Coker liable under count III of the Dollars' counterclaim. Because the allegations against Vucovich in count IV are based on a theory of vicarious liability, we necessarily also hold that the district court erred in finding Vucovich liable. Owing to our disposition of Coker's and Vucovich's appeals, the issue of whether the district court erred in awarding punitive damages is moot.

■ Turning to the Dollars' cross-appeal, we hold that the district court correctly denied relief on count I of their counterclaim. In that count, the Dollars alleged that Coker and Vucovich, by entering into the joint venture with Jackson in February 1980, intentionally interfered with the Dollars' October 31, 1979 contract with Jackson. That claim is plainly without merit.

Under Florida law, the Dollars had the burden of proving that they had an advantageous business relationship with Jackson,

that Coker and Vucovich intentionally and unjustifiably interfered with that relationship, and that this interference caused a breach of the contract with damages to the Dollars. *See Heavener, Ogier Servs., Inc. v. R.W. Florida Region, Inc.,* 418 So.2d 1074, 1076 (Fla.Dist.Ct.App.1982). We can assume that Jackson breached the October 31, 1979 contract with the Dollars by (1) failing to set up the escrow account, or (2) failing to locate exchange property. The Dollars adduced no proof, however, that Coker and Vucovich's act of entering into the joint venture agreement with Jackson in February 1980 in any way *caused* Jackson to commit these breaches. Simply put, nothing about the joint venture prevented Jackson from performing the contract with the Dollars. We agree with the district court that the Dollars' proof fails to establish the critical element of causation, and that their claim of intentional interference therefore necessarily fails.

### III.

In summary, we reverse the district court's finding of liability with respect to counts III and IV of the Dollars' counterclaim, and we affirm the district court's denial of relief with respect to count I.

AFFIRMED in part, and REVERSED in part.

---

**6.** One rationale for the "rescue" rule is that the defendant, by his actions, may have discouraged or prevented a more able rescuer from aiding the injured party. W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on the Law of Torts* § 56, at 381 & n. 85 (5th ed. 1984). That rationale has no relevance to the facts of this case. Additionally, to the extent that the rule is based on some theory of reliance, that rationale is also irrelevant here. The district court specifically found that the Dollars were

unaware that Coker had been delegated the job of setting up the escrow account.

**7.** The Dollars argue as an alternative theory that Coker, a licensed real estate agent, is liable to them because real estate agents have a duty under Florida law to be honest, open, and fair with their clients. The short answer to this argument is that the Dollars were never Coker's clients.