432 So.2d 1338 (1983)
Charles W. SMITH and Emma L. Smith, His Wife, Appellants,
v.
DEPARTMENT OF CORRECTIONS OF the STATE of Florida; J.R. Reddish, Individually, Appellees.
No. AL-39.
District Court of Appeal of Florida, First District.
April 27, 1983.
As Corrected on Denial of Rehearing June 17, 1983.
*1339 Steven E. Rohan of Vickers & Rohan, P.A., Jacksonville, for appellants.
Richard L. Randle of Slater & Randle, P.A., Jacksonville, for appellees.
MILLS, Judge.
Smith appeals the dismissal with prejudice of his second amended complaint. We reverse.
Once again we are faced with the application of the operational/judgmental dichotomy announced in Commercial Carrier v. Indian River, 371 So.2d 1010 (Fla. 1979). The facts must be taken as alleged by Smith.
In February 1973, Prince was convicted of first degree murder and given a life sentence. His parole from a 20-year sentence for armed robbery was revoked.
In October 1974, Prince was classified as a minimum custody inmate and transferred to Clay County Vocational Center. He escaped that day.
Twelve days later he was recaptured in Jacksonville suffering from unexplained gunshot wounds. He subsequently pled guilty to escape and received a one-year sentence. He was returned to Lake Butler in maximum custody.
In May 1976, J.R. Reddish, a Department of Corrections (DOC) employee, caused Prince to be reclassified to minimum custody status. In October 1976, Reddish was transferred to Union Correctional Institute and Prince was also transferred. During this time Reddish used Prince as a "houseboy."
In August 1977, Reddish prevailed upon DOC transfer authorities and the warden at Lawtey Correctional Institute to transfer Prince to Lawtey. In October 1977, Prince was transferred and held in minimum custody. In March 1978, Prince escaped and returned to Jacksonville.
In June 1978, Prince, in the course of an armed robbery, abducted and shot Smith, causing damage to Smith and his wife. Smith has brought suit against DOC and Reddish.
The trial court dismissed with prejudice Smith's second amended complaint based upon holdings that inmate classification was a discretionary rather than operational function, thus, immune from tort liability and, alternatively, that elapsed time between reclassification and escape and further elapsed time before Smith's injury rendered Smith's injury unforeseeable.
*1340 We easily dispose of the alternative holding. Prince's lengthy history of violence coupled with his escape record creates a jury question on the issue of foreseeability. A jury could reasonably conclude that violence to third parties was a foreseeable consequence of placing Prince in minimum custody. The period of time between Prince's transfer to Lawtey and his escape and the shooting of Smith is not enough to justify taking this issue from the jury.
Sovereign immunity presents a more difficult question. Commercial Carrier is the starting point of any analysis in this area. There the Supreme Court found immunity for judgmental planning level functions but no immunity for operational level functions.
To aid in classification, the Supreme Court adopted a four-prong test. We have examined the four questions and have concluded that not all of them may be clearly answered affirmatively. In particular, while inmate classification is necessary to the maintenance of a prison system, this inmate's reclassification appears to have been made for reasons unrelated to the functioning of the prison system and without use of agency expertise. Further inquiry is required.
In Bellavance v. State, 390 So.2d 422 (Fla. 1st DCA 1980), this court found no immunity when a state mental hospital negligently released a violent patient who injured a third party.
In Kirkland v. State, 424 So.2d 925 (Fla. 1st DCA 1983), this Court remanded for further amendments a complaint alleging negligent supervision of a mental patient. In Payton v. United States, 636 F.2d 132 (5th Cir.1981), the decision to parole a homicidal psychotic was held not discretionary under the Federal Tort Claims Act and therefore actionable. On rehearing en banc, the Fifth Circuit held the parole decision discretionary but further held the Bureau of Prison's failure to maintain proper records or forward them to the parole authorities actionable. 679 F.2d 475 (5th Cir.1982). However, in dicta, the Second District Court of Appeal recently observed that post-sentence decisions were largely discretionary, Everton v. Willard, 426 So.2d 996 (Fla. 2d DCA 1983).
After consideration of these cases, we conclude that there is no sovereign immunity when an inmate is negligently given preferential treatment and placed in inadequately supervised confinement. The fact that prison officials have some discretion in assignments of inmates does not require immunity, Rupp v. Bryant, 417 So.2d 658 (Fla. 1982).
The dismissal of the Smith's second amended complaint is reversed and the cause is remanded for further proceedings consistent with this opinion.
ERVIN, J., concurs specially with opinion.
THOMPSON, J., dissents with opinion.
ERVIN, Judge, specially concurring.
I agree with the majority's position. The basis of the agency's negligence is that the Department had notice of the dangerous propensity of an inmate in its custody for violence, yet notwithstanding its notice, it persisted on a course to place him in a minimum custody facility, from which he escaped and caused injury to innocent third persons who had not been provided such notice. The approach followed by the court is altogether consistent with the analysis employed in Johnson v. State, 69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968), which was adopted by the Florida Supreme Court as a means of identifying the two levels of decision-making by governmental agencies. Commercial Carrier Corporation v. Indian River County, 371 So.2d 1010, 1022 (Fla. 1979). In Johnson, the California Supreme Court stated that the California Youth Authority properly exercised its discretion to release a youthful offender; but, in carrying out the decision, not only to release the youth, but to place him in a foster home, once the Authority had knowledge of the parolee's propensity for violence, it was under a duty to advise the intended foster parents of such facts, and the failure to do so rendered it subject to an action in negligence. *1341 The court made the following observations:
Once an official reaches the decision to parole to a given family, however, the determination as to whether to warn the foster parents of latent dangers facing them presents no such reasons for immunity; to the extent that a parole officer consciously considers pros and cons in deciding what information, if any, should be given, he makes such a determination at the lowest, ministerial rung of official action. Judicial abstinence from ruling upon whether negligence contributed to this decision would therefore be unjustified; coupled with the administrative laxness that caused the loss in the first instance, it would only result in the failure of governmental institutions to serve the injured individual.
73 Cal. Rptr. at 250, 447 P.2d at 362 (e.s.). The court continued:
Defendant failed to warn plaintiff of a foreseeable, latent danger, and this failure led to plaintiff's injury from precisely the expected source; courts encounter this type of allegation daily and are well suited to resolve its validity under traditional tort doctrine.
73 Cal. Rptr. at 251, 447 P.2d at 363.
The Florida Supreme Court applied by implication the Johnson analysis in two consolidated cases in which the records disclosed the defendant municipality was on notice of a dangerous condition which it had created:
We hold that when a governmental entity creates a known dangerous condition, which is not readily apparent to persons who could be injured by the condition, a duty at the operational-level arises to warn the public of, or protect the public from, the known danger. The failure to fulfill this operational-level duty is, therefore, a basis for an action against the governmental entity.
City of St. Petersburg v. Collom, 419 So.2d 1082, 1083 (Fla. 1982) (emphasis in original).
Since Section 768.28(1), Florida Statutes, generally permits actions against the state or its agencies to the same extent that a private person would be liable to a plaintiff under the laws of the state, I think section 319 of the Restatement (Second) of Torts is pertinent: "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."
The majority's opinion would seem, however, to conflict with those of the Second District Court of Appeal in Everton v. Willard, et al., 426 So.2d 996 (Fla. 2d DCA 1983), and City of Cape Coral v. Duvall, 8 FLW 366 (Fla. 2d DCA, January 19, 1983), which absolved certain governmental bodies from any liability to persons injured by intoxicated motorists who, some time before the accidents, had been released by the public employer's law enforcement officers notwithstanding their knowledge of the inebriates' condition.
I do not think the Everton or City of Cape Coral opinions can be squared with the supreme court's decision in Collom, due to the knowledge the officers had of the motorists' capacity for harm to the public if they were permitted to remain at liberty. Perhaps the opinions can be understood as recognizing a public policy exception to the waiver of immunity doctrine for police officers performing discretionary acts in the course of their duties. If so, I think this is a very dangerous precedent, and one that could create even greater difficulties in attempting to locate the line between the discretionary-operational levels of activity, if the officer exercises his discretion in disregard of a known danger.
THOMPSON, Judge, dissenting.
I dissent. I would affirm the trial judge. If there is any governmental sector in which immunity for judgmental decisions must be maintained, it is in our criminal justice and penal systems. Judges place convicted criminals on probation when, in their judgment, it is warranted. The Florida Parole and Probation Commission (Commission) releases prisoners from confinement *1342 in the exercise of its discretion and in accordance with legislatively mandated guidelines. The Department of Corrections (DOC) exercises its judgment to determine the extent of confinement of prisoners, such as solitary confinement or minimum security, subject only to certain prescribed limitations. In order to maintain the integrity and operability of our criminal justice and penal systems these judgmental decisions must be immune from suit by citizens injured by probationers, parolees, or those whose confinement status has been changed by the DOC in accordance with its rules and regulations.
Under the foreseeability test approved by the majority, it is foreseeable that all inmates who escape or are released through official channels will commit a crime again simply because they have previously done so at least once. Under such a foreseeability test, judges and the state could be liable for injury or damage caused by a probationer. The Commission and the state could be liable for injury or damage caused by a parolee. The DOC and the state could be liable for injury or damage caused by an escapee or by an inmate whose confinement status has been changed in accordance with DOC rules and regulations. The majority's foreseeability test is simply not applicable to judgmental decisions such as those outlined above because they are immune from traditional theories of tort liability.
In Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010, 1020 (Fla. 1979) the court said "even absent an express exception in section 768.28 for discretionary functions, certain policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability." Commercial Carrier relied heavily on Evangelical United Brethren v. State, 67 Wash.2d 246, 407 P.2d 440 (1965), involving a claim against the state of Washington by plaintiffs whose buildings had been destroyed by a fire set by an escapee from a state-maintained juvenile correctional facility. The plaintiffs in Evangelical United Brethren alleged the state of Washington was negligent in maintaining an "open program" or minimum security at the facility, in assigning the escapee to the "open program," in assigning the escapee to a particular work detail within the facility, in failing to timely notify local law enforcement agencies of the escape. The Evangelical United Brethren court held the state was immune from liability for its decision to have an "open program" and for the assignment of the escapee to that program. It further held that although the assignment of the escapee to the particular work detail of the facility and the failure to timely notify local law enforcement agencies of the escape did not involve immune conduct, the state was not liable on standard tort principles of lack of foreseeability and causation.
The following rationale used in Evangelical United Brethren and quoted in Commercial Carrier is instructive:
The reason most frequently assigned is that in any organized society there must be room for basic governmental policy decision and the implementation thereof, unhampered by the threat or fear of sovereign tort liability, or, as stated by one writer "Liability cannot be imposed when condemnation of the acts or omissions relied upon necessarily brings into question the propriety of governmental objectives or programs or the decision of one who, with the authority to do so, determined that the acts or omissions involved should occur or that the risk which eventuated should be encountered for the advancement of governmental objectives." Peck, The Federal Tort Claims Act, 31 Wash.L.Rev. 207 (1956). .. .
Evangelical United Brethren, 407 P.2d at 444.
Commercial Carrier commended the four-point test adopted by Evangelical United Brethen to determine those acts or functions which remain immune from tort liability. While this test might appear difficult to apply in some situations, it is easily applied in this case. First, the challenged decision of a reclassification in the prison system necessarily involves the basic governmental program of rehabilitation. *1343 Second, the decision to reclassify Prince is essential to the realization of the rehabilitation program and objective. Third, the decision to reclassify Prince required the exercise of basic policy judgment and expertise on the part of the DOC. Fourth, the DOC has the requisite authority and duty to classify or reclassify an inmate's prison status. Accordingly, I disagree with the majority's conclusion that not all of the four can be answered in the affirmative and conclude that the challenged decision is immune from liability.
If Prince had escaped while under little or no custodial restraints when serving as Reddish's "house-boy" there might be some basis for applying the foreseeability test. However, Prince was reclassified from maximum custody status to minimum custody status in May of 1976, almost one and one-half years before his transfer to Lawtey Correctional Institute (Lawtey), and had been in minimum custody status for approximately one year and ten months before escaping. Prince's transfer to Lawtey was made by the DOC Transfer Authority at Union Correctional Institute (UCI). The Transfer Authority at UCI was deleted as a defendant in the amended complaint which was subsequently dismissed. There is no allegation that the custodial officers at Lawtey were negligent. Only by hindsight are we now able to foresee that approximately five months after his transfer Prince would escape and subsequently seriously injure someone during the commission of a crime.
The challenged decision in this case involved immune conduct and even if it were not immune, the DOC should not be liable on standard tort principles of lack of foreseeability and causation.

ON MOTION FOR REHEARING AND CLARIFICATION
MILLS, Judge.
The following question is certified as being of great public importance:
May prisoner classifications ever give rise to tort liability, and, if so, under what circumstances?
ERVIN and THOMPSON, JJ., concur on amendment to opinion.
ERVIN, J., concurs on denial of motion for rehearing.
THOMPSON, J., dissents.
THOMPSON, J., concurs of certification of question.
ERVIN, J., dissents.