468 So.2d 929 (1985)
J.R. REDDISH and the Department of Corrections of the State of Florida, Petitioners,
v.
Charles W. SMITH and Emma L. Smith, His Wife, Respondents.
No. 63950.
Supreme Court of Florida.
April 4, 1985.
Richard L. Randle of Slater and Randle, Jacksonville, for petitioners.
Kenneth Vickers of Vickers and Rohan, Jacksonville, for respondents.
Jim Smith, Atty. Gen., and Miguel A. Olivella, Asst. Atty. Gen., Tallahassee, amius curiae for Atty. Gen. of The State of Florida.
Barry Richard of Roberts, Baggett, LaFace, Richard and Wiser, Tallahassee, amius curiae for James M. Johnson.
*930 BOYD, Chief Justice.
This cause is before the Court on petition for review of a decision of the First District Court of Appeal reversing the dismissal of the respondents' complaint against a state agency and a state employee. Smith v. Department of Corrections, 432 So.2d 1338 (Fla. 1st DCA 1983). The district court certified that its decision passed upon a question of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
The complaint alleged as follows. In February, 1973, a man named Prince was sentenced to life imprisonment, having been adjudged guilty of first-degree murder. At about the same time, Prince's parole from a previously imposed twenty-year sentence for the offense of armed robbery was revoked. In 1974, Prince was sent to a minimum-security vocational training center in Clay County. In October, 1974, he escaped. He was recaptured several days later at a hospital in Jacksonville where he was being treated for gunshot wounds. Prince received a sentence of an additional year in prison after pleading guilty to escape. Upon being again processed into the state prison system, Prince was designated for assignment to a maximum-security facility.
The complaint went on to allege as follows. In May, 1976, defendant (petitioner) J.R. Reddish caused Prince's classification to be changed from "medium custody status" to "minimum custody status." Reddish made use of the personal services of Prince in connection with Reddish's relocation from the Lake Butler Reception and Medical Center to Union Correctional Institute. Reddish effected Prince's transfer to the latter facility and personally transported him there. While Prince was an inmate of Union Correctional Institute and Reddish an employee, Reddish used Prince as a servant in his home. In August, 1977, Reddish asked departmental authorities to transfer Prince to Lawtey Correctional Institute, a minimum-security facility. The necessary authorizations were given within the month and in October, 1977, Prince was transferred. In March, 1978, Prince escaped. In June, 1978, Prince abducted and shot with a firearm plaintiff-respondent Charles W. Smith during the course of a robbery in Jacksonville. The complaint alleged damages resulting from this shooting.
The theory of liability expressed in the complaint is two-fold. On one theory, the respondents claimed that Reddish and other officials of the Department of Corrections failed to conform to the proper standard of care to be taken in classifying and assigning the custody of prisoners. The other theory is that Reddish himself acted in a willful, wanton, and malicious manner, and that his actions regarding Prince were wrongful and were taken in bad faith for personal gain.
On motion of the defendants the complaint was dismissed. As was stated above, the district court of appeal reversed. The dismissal was grounded upon the sovereign immunity of a state agency in performing a discretionary function and upon lack of foreseeability due to the lapse of time between the acts of classification and assignment and the escape. Regarding the second point, the district court held that in view of the prisoner's prior record it was foreseeable that he would try to escape and if successful commit another violent crime.
On the issue of sovereign immunity, the district court reasoned that not all four questions set forth in Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979), could clearly be answered in the affirmative. "In particular," the court said, "while inmate classification is necessary to the maintenance of a prison system, this inmate's reclassification appears to have been made for reasons unrelated to the functioning of the prison system and without use of agency expertise." 432 So.2d at 1340. The district court certified the following as a question of great public importance: "May prisoner classifications ever give rise to tort liability, and, if so, under what circumstances?" 432 So.2d at 1343.
*931 In Commercial Carrier, this Court recognized a distinction between planning-level, discretionary policy-making decisions on the one hand, and operational-level decisions on the other, for purposes of applying the statutory waiver of sovereign immunity, holding that the former type of governmental decision was still immune while the latter was covered by the waiver and therefore could be actionable. The Court summed up its decision by holding
that although section 768.28 [Florida Statutes (1975)] evinces the intent of our legislature to waive sovereign immunity on a broad basis, nevertheless, certain "discretionary" governmental functions remain immune from tort liability. This is so because certain functions of coordinate branches of government may not be subjected to scrutiny by judge or jury as to the wisdom of their performance. In order to identify those functions, we adopt the analysis of Johnson v. State, supra [69 Cal.2d 782, 73 Cal. Rptr. 240, 447 P.2d 352 (1968)], which distinguishes between the "planning" and "operational" levels of decision-making by government agencies. In pursuance of this case-by-case method of proceeding, we commend utilization of the preliminary test iterated in Evangelical United Brethren Church v. State, supra [67 Wash.2d 246, 407 P.2d 440 (1965)], as a useful tool for analysis.
371 So.2d at 1022. The commended preliminary test was set forth at an earlier point in the opinion and contains the four questions referred to by the district court of appeal in the instant case:
Whatever the suitable characterization or label might be, it would appear that any determination of a line of demarcation between truly discretionary and other executive and administrative processes, so far as susceptibility to potential sovereign tort liability be concerned, would necessitate a posing of at least the following four preliminary questions: (1) Does the decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved.
371 So.2d at 1019 (quoting Evangelical United Brethren Church v. State, 67 Wash.2d 246, 255, 407 P.2d 440, 445 (1965)).
We have little difficulty concluding that with regard to the classification and assignment of prisoners within the state prison system, all four of these questions can clearly and unequivocally be answered in the affirmative. The administrative process in question is an inherent feature of the essential governmental role assigned to the Department of Corrections and is authorized by statute. § 945.06, Fla. Stat. (1977); see also id. § 944.012(6). We therefore conclude that under Commercial Carrier the claims against the Department of Corrections and, to the extent based upon negligent performance of duties within the scope of employment, against Reddish, are precluded by sovereign immunity. See, e.g., Harrison v. Escambia County School Board, 434 So.2d 316 (Fla. 1983); Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982). The complaint in this case was based on the classification and assignment of Prince and not on *932 the possible negligence of the department's employees having a direct and operational-level duty to supervise him and keep him confined at the time of his escape.
Moreover, even if it could be said that the decisions complained of in this case were on the operational level, we would hold that there can be no liability imposed on the Department of Corrections. The waiver of sovereign immunity statute makes clear that it is just that: a waiver of the absolute immunity previously barring the imposition of any liability upon the state. As we hold in the decision made today in Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla. 1985), the waiver statute created no new causes of action not previously recognized by common-law principles of tort responsibility.
The statute waiving sovereign immunity provided in pertinent part as follows:
Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act.
768.28(1), Fla. Stat. (1977) (emphasis supplied). The emphasized language makes clear that recovery is to be allowed only to the extent that such is available against a private person for the same kind of conduct as that committed by a state employee and charged as being tortious. Thus, where a Department of Corrections driver negligently operates his van while transporting prisoners thereby causing a collision resulting in injuries to another, a body of tort law exists by which liability can be established based on the negligent conduct of the driver. This kind of activity is covered by the waiver of sovereign immunity. But the decision to transfer a prisoner from one corrections facility to another is an inherently governmental function not arising out of an activity normally engaged in by private persons. Therefore the statutory waiver of sovereign immunity does not apply.
For the foregoing reasons we answer the certified question in the negative and quash the decision of the district court of appeal to the extent it held that the complaint stated a cause of action against Reddish and the department for negligent classification and assignment of the prisoner.
Reference was made previously in this opinion to another count of the complaint suggesting that the classifying and assigning decisions taken regarding inmate Prince were not the product of departmental processes carried out pursuant to regular procedures and regulations, but rather were brought about by the unlawful and wrongful scheme of petitioner Reddish. The respondents' suggestion is that Reddish knowingly and fraudulently brought about the improper decisions through evasion and circumvention of departmental rules, regulations, and policies. It might be argued that as such, this separate count alleges that Reddish exceeded his authority and acted outside the scope of his employment. The remaining issue before us is whether this allegation stated a cause of action against Reddish alone in his personal capacity.
There is no question of sovereign immunity connected to this issue. The department's liability for the acts of Reddish under the concept of respondeat superior would depend on the acts being committed in the course of his employment. Moreover, in our view an employee does not share in the state's immunity if he exceeds the authority of his position and departs from the scope of his employment. See § 111.07, Fla. Stat. (1977). We therefore *933 turn now to the allegations of the complaint pertaining to this issue.
The complaint alleged that on or about August 5, 1977 Reddish, as assistant superintendent of Union Correctional Institute, made a request of "a transfer authority" that inmate Prince be transferred to Lawtey Correctional Institute. At about the same time, it is alleged, Reddish asked the superintendent of Lawtey to accept Prince as a transferee. The complaint alleged further: "Prince was transferred to Lawtey Correctional Institute as a minimum custody inmate on or about October 26, 1977 as a result of favoritism shown to Prince resulting from Prince's personal services for Reddish, all without the reasonable and ordinary care ordinarily used in causing said transfers." Finally, the complaint alleged that "defendant J.R. Reddish acted in bad faith for personal gain, and in a manner exhibiting wanton and willful disregard of the human rights and safety of plaintiff Charles Wayne Smith." See id. § 111.07.
We find that the allegations of impropriety and bad faith are too conclusory. There are insufficient specific factual allegations of wrongful violations of law or departmental rules and regulations to state a case for personal liability against Reddish. The only factual allegations are that he requested the transfer. The conclusion that this request was made in bad faith for personal gain is not supported by specific allegations of fact.
Moreover, even if the allegations were sufficient, we would find as a matter of law that the causal connection between the alleged wrongful act of transfer and the subsequent escape and the shooting of respondent is so attenuated that the injury was not a foreseeable result of the act. As noted by Judge Thompson in his dissent to the district court decision, the prisoner was reclassified to minimum-custody status almost a year and a half before he was transferred to Lawtey. Seven months elapsed from the time Reddish requested Prince's transfer to Lawtey and the time of his escape and several more months had passed by the time of the criminal acts causing injury to the respondent, Mr. Smith. While in a broad sense it is always foreseeable that a convicted violent criminal will commit violent crime again if he has the opportunity, the causal connection here is so tenuous as to be legally nonexistent. The allegations of the complaint are therefore fatally defective on the matter of causation and foreseeability. See, e.g., Spann v. Department of Corrections, 421 So.2d 1090 (Fla. 4th DCA 1982); Guice v. Enfinger, 389 So.2d 270 (Fla. 1st DCA 1980).
The decision of the district court of appeal is quashed and the case is remanded to that court with directions to affirm the dismissal of the respondents' complaint.
It is so ordered.
ADKINS, OVERTON and ALDERMAN, JJ., concur.
McDONALD, J., concurs in result only.
EHRLICH, J., dissents with an opinion.
SHAW, J., dissents with an opinion.
EHRLICH, Justice, dissenting.
I dissent and would answer the question in the affirmative. Section 945.09(3), Florida Statutes (1977) requires that transfers and reclassifications be made pursuant to regulations provided by Department of Corrections.
While the result of any decision made pursuant to those regulations and procedures would be protected by sovereign immunity, any decision which does not strictly comply with departmental regulations is by its very nature a breach of duty by those making the decision. A prison warden does not have the authority to go outside the established channels to aid a prisoner with whom he has established a personal relationship.
As I read the complaint, plaintiff sufficiently alleges the favoritism and the manipulation of the system by Reddish for Prince, and the complaint thus makes a prima facie showing that a governmental *934 employee breached his duty to abide by the policies set forth by his employer.
For the same reasons set forth in my dissent in Trianon Park Condominium Association, I believe such deviation from established procedure is a breach of duty which would give rise to a cause of action under the facts of this case.
I would approve the decision of the district court.
SHAW, Justice, dissenting.
The trial court dismissed the cause of action on the ground that the tortious action was discretionary and, therefore, the state was sovereignly immune from suit. The district court reversed on the ground that the state was not sovereignly immune.
The majority disapproves and quashes the district court decision on two grounds. First, that the classification and assignment of prisoners is a governmental function for which there is sovereign immunity. Second, that the classification and assignment of prisoners is not an activity which private persons perform and section 768.28, Florida Statutes (1977), does not waive sovereign immunity for activities which are not performed by private persons. The first ground is a return to the governmental versus proprietary functions test which was once used as a basis for determining whether municipal governments were sovereignly immune from suit. The second ground is a restated variation of the first ground. The majority has simply adopted, without comment, the dissenting opinion to Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010 (Fla. 1979). Both grounds were explicitly rejected in Commercial Carrier.
There are three basic questions posed by this case. First, did the legislature waive sovereign immunity for exclusively governmental functions such as classifying and assigning prisoners to correctional facilities when such functions are not performed by private persons? Second, should the state be liable for its negligence in carrying out the classification and assignment of prisoners, which negligence results in injury to particular persons? Third, should the tort victims of state negligence in classifying and assigning prisoners be fully compensated by the state for their injuries? The majority answers no, no, and no to these three questions. I find it interesting and enlightening that these same three questions were concurrently presented in a relief act to the Florida Legislature in an on-point case and that it answered yes, yes, and yes.
In Division of Corrections v. Wynn, 438 So.2d 446 (Fla. 1st DCA 1983), Robert Lee White, a work-release inmate under the supervision of the Florida Department of Corrections, committed the crime of rape. A negligence suit was brought against the department by the innocent victim, and a judgment entered for plaintiff which was subsequently affirmed. Because section 768.28(5), as it existed at the time, limited state liability to $50,000, the victim sought additional relief from the Florida Legislature for the remaining unsatisfied sum of $200,000. The legislature granted the requested relief and in doing so found the following:
WHEREAS, the Department of Corrections is charged with the responsibility of supervising work-release inmates at the work-release facility in Pensacola, Florida, and
WHEREAS, the Department of Corrections was charged with the custodial responsibility of supervising Robert Lee White, a work-release inmate at the work-lease facility in Pensacola, Florida, and
WHEREAS, the Department of Corrections knew or should have known that Robert Lee White was dangerous, violent, and had an extensive criminal record for sexual assault and other violent crimes, and
WHEREAS, the Department of Corrections negligently allowed Robert Lee White to roam about the community unsupervised and uncontrolled and, as a result of the department's negligence, Robert Lee White forcibly entered the residence of Mrs. Hazel W. Wynn and *935 violently assaulted her against her will, and
WHEREAS, as a result of the department's negligence, Hazel W. Wynn suffered severe and permanent psychological and psychiatric injuries and was abused and battered during the assault, and
WHEREAS, a complaint was filed against the Department of Corrections for the negligent supervision of Robert Lee White which resulted in the injuries to Hazel W. Wynn, and pursuant to a jury verdict returned March 31, 1982, in the amount of $250,000, a final judgment was rendered against the Department of Corrections on October 29, 1982, and
WHEREAS, the final judgment rendered against the Department of Corrections was upheld on appeal by the District Court of Appeal, First District, State of Florida, in an opinion filed September 19, 1983, and
WHEREAS, s. 768.28(5), Florida Statutes, as it existed at the time Hazel W. Wynn was assaulted, provided that a claim in excess of $50,000 may be reported to the Legislature so that it may be paid by further act of the Legislature, and
WHEREAS, said verdict has been partially satisfied, but there remains unsatisfied $200,000 plus statutory interest to date of payment, NOW, THEREFORE, Be It Enacted by the Legislature of the State of Florida:
Section 1. The facts stated in the preamble to this act are found and declared to be true.
Section 2. The sum of $200,000 is appropriated out of funds in the State Treasury to the credit of the Department of Corrections not otherwise appropriated to be paid to Hazel W. Wynn as relief for injuries and damages sustained by her.
Section 3. The Comptroller is directed to draw his warrant in favor of Hazel W. Wynn in the sum of $200,000 upon funds in the State Treasury to the credit of the Department of Corrections, and the State Treasurer is directed to pay the same out of such funds in the State Treasury not otherwise appropriated.
Ch. 84-383, Laws of Fla. (emphasis supplied).
There are two points in this relief act that are particularly noteworthy. First, the premise underlying the relief act is that the judgment was valid in relying on the legislative waiver of sovereign immunity. § 768.28. Second, as shown by the underlined portions of the act, the department is charged with the custodial responsibility of supervising prisoners and is liable for negligent violations of that duty. In this connection, see specifically, section 944.012(6)(b), Florida Statutes (Supp. 1974), which provides that it is the intent of the legislature "[t]o separate dangerous or repeat offenders from nondangerous offenders, who have potential for rehabilitation, and place dangerous offenders in secure and manageable institutions."
For the reasons set forth in my dissents in Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla. 1985); Everton v. Willard, 468 So.2d 936 (Fla. 1985); Carter v. City of Stuart, 468 So.2d 955 (Fla. 1985); and Duvall v. City of Cape Coral, 468 So.2d 961 (Fla. 1985), I would approve the district court's holding that there is no sovereign immunity in this instance. Assuming, as we must, that the allegations are true, it seems clear that the department assigned a very dangerous prisoner with a history of escape to a minimum security facility, and, as was foreseeable, he escaped and committed a violent crime. It also appears that the assignment was based on special treatment or consideration. In the posture of the case, respondent should be given an opportunity to prove the allegations of negligence in the complaint.