515 So.2d 1349 (1987)
James E. HUFF, Also Known As James Giesbrecht, Appellant,
v.
GOLDCOAST JET SKI RENTALS, INC., a Florida Corporation, and City of Hollywood, a Municipal Corporation, Appellees.
No. 4-86-0992.
District Court of Appeal of Florida, Fourth District.
November 25, 1987.
Henry T. Wihnyk of Weaver, Weaver, Lardin & Liroff, P.A., Fort Lauderdale, for appellant.
Shelley H. Leinicke of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Fort Lauderdale, for appellees.
DOWNEY, Judge.
Appellant, James E. Huff, sued Goldcoast Jet Ski Rentals, Inc., and the City of Hollywood for damages sustained in an accident while Huff was sailing a dinghy in the intracoastal waterway in the City of Hollywood, Florida. From an order dismissing the third amended complaint Huff has perfected this appeal.
For appellate purposes, the third amended complaint only involves the City. The pertinent allegations are that Huff was injured when a Jet Ski rented from Goldcoast was so negligently operated in the intracoastal waterway in Hollywood, Florida, as to injure Huff as he was sailing a dinghy in a no wake zone of the waterway. It is alleged that, by licensing Goldcoast to operate a Jet Ski rental business in the waterway adjacent to a no wake zone, the City created a dangerous condition of which it had knowledge, i.e., the City knew or should have known that Jet Skis rented from Goldcoast would be operated in the no wake zone in such a fashion as to create a wake dangerous to other boaters in the zone and that this danger was not apparent to the average boater using the waterway. The main thrust of the City's motion to dismiss is that the act of the City in licensing Goldcoast was a planning-level decision and did not subject the City to liability therefor. The City relies upon cases such as Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla. 1985), and City of Cape Coral v. Landahl, Brown & Weed Associates, Inc., 470 So.2d 25 (Fla. 2d DCA 1985), which stand for the proposition that no cause of action accrues to an injured person against a municipality for exercising the governmental function of issuing a permit or license.
Huff contends that the City is liable because it created a known dangerous condition *1350 not readily apparent to waterway users when it licensed Goldcoast and yet the City failed to adequately warn the boating public of the danger. To support this thesis Huff relies upon such cases as Payne v. Broward County, 461 So.2d 63 (Fla. 1984); Ralph v. City of Daytona Beach, 471 So.2d 1 (Fla. 1983); City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982); Dept. of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982).
It is noteworthy that the cases generally relied on by Huff involve liability arising out of operational-level activities. For example, the City's liability arose in City of St. Petersburg v. Collom, 419 So.2d 1082 (Fla. 1982), from its activity in building and maintaining a drainage system; in Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982), from building a highway intersection; and in Ralph v. City of Daytona Beach, 471 So.2d 1 (Fla. 1983), from the creation of and authority to supervise and control a highway on its public beach. Clearly, under those circumstances, having created a known dangerous condition not readily apparent to persons who could be injured thereby, the governmental entity has a duty to warn.
In determining whether the issuance of a license or permit can give rise to a duty on the part of a governmental entity to warn of dangerous conditions that may arise out of the activities of the licensee or permittee, we must first determine whether there was such a duty recognized at common law or by statute. If not, since no new causes of action were created by the statute waiving governmental immunity, no such cause of action exists now. This elementary concept is nicely put in Zieja v. Metropolitan Dade County, 508 So.2d 354, 356 (Fla. 3d DCA 1986), wherein the court en banc stated:
The first step in determining whether a government is liable for negligent conduct is to decide whether the alleged negligent act could possibly give rise to either a common law or statutory duty. Trianon Park Condominium Ass'n v. City of Hialeah, 468 So.2d 912, 917 (Fla. 1985). If the act is inherently governmental, there can be no duty owed to individual citizens. Trianon, 468 So.2d at 919-20; Reddish v. Smith, 468 So.2d 929, 932 (Fla. 1985). Additionally, the creation of section 768.28, waiving sovereign immunity in certain circumstances, created no new causes of action against a governmental entity which did not previously exist. Trianon, 468 So.2d at 914; Reddish, 468 So.2d at 932. Therefore, absent a recognized duty of care, the governmental entity is not liable, regardless of whether sovereign immunity attaches or is waived by section 768.28. Trianon, 468 So.2d at 919. See also Reddish, 468 So.2d at 932 (where there is no underlying duty the waiver statute is not applicable).
The issuance of a permit or a license has been held to be a function akin to legislative and executive office functions, which remain immune from liability because they are of the essence of governing. Thus, in Trianon Park Condominium Association v. City of Hialeah, 468 So.2d 912 (Fla. 1985), the supreme court divided governmental functions into four categories, two immune, two not. As to the first category, which includes licensing, the court said:
Clearly, the legislature, commissions, boards, city councils, and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are acting pursuant to basic governmental functions performed by the legislative or executive branches of government. The judicial branch has no authority to interfere with the conduct of those functions unless they violate a constitutional or statutory provision. There has never been a common law duty establishing a duty of care with regard to how these various governmental bodies or officials should carry out these functions. These actions are inherent in the act of governing.
Id. at 919 (citations omitted).
The planning-level activity here is whether to license a business to operate at some *1351 point on the waterway in Hollywood. To hold that, by issuing an operational license, the City thereby becomes exposed to liability because it knew or should have known that some person might operate a ski or a boat at such a speed as to create a wake and endanger other boaters is an unjustified quantum leap we decline to take. It is common knowledge that some drivers of automobiles exceed the posted speed limit on public highways. But that would not justify the contention that, by issuing a license to operate an automobile rental agency abutting a public highway near a school zone or other limited speed zone, a governmental agency thereby creates a known dangerous condition that may give rise to a duty to warn other travelers on the highway.
Adverting to the status of the present case, the matter is here on dismissal of an amended complaint so that we must accept all well-pleaded allegations thereof. However, it does not suffice to simply look at the pleading and see that Huff charged the City with creating a dangerous condition and then failing to warn unwary boaters of the danger. Unquestionably, had the City created a dangerous condition constituting a trap or hazard for unwary boaters, a cause of action would be stated. We cannot accept, however, the contention that, by issuing an occupational license to Goldcoast to operate a Jet Ski rental business on the waterway, the City thereby created a dangerous condition. While the complaint uses the buzz words, the requisite factual allegations do not support the conclusion.
Accordingly, we hold that Huff's third amended complaint fails to state a cause of action against the City because the City is immune from liability in tort arising out of the exercise of its licensing and permitting functions.
The order appealed from is affirmed.
ANSTEAD and DELL, JJ., concur.