# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2024-0982

_____

FLORIDA DEPARTMENT OF
CORRECTIONS,

     Appellant,

     v.

ANDREW CAMPBELL,

     Appellee.

_____

On appeal from the Circuit Court for Leon County.
John C. Cooper, Judge.

July 30, 2025

PER CURIAM.

The Florida Department of Corrections (DOC) appeals the trial court's non-final order denying its motion to dismiss the negligence suit brought against it by an inmate, Andrew Campbell. Because DOC has sovereign immunity from suit, we reverse.

*Facts*

While Campbell was imprisoned at Madison Correctional Institution, he was stabbed by a fellow inmate. DOC transferred him to Suwannee Correctional Institution, where Campbell was

stabbed again by another inmate. Campbell was flown to Shands Hospital, where he stayed for two months and underwent multiple surgeries to treat his injuries. After Campbell was discharged from Shands, DOC assigned Campbell to Lake Butler Reception and Medical Center, where he recovered from his injuries for another two months. Thereafter, DOC transferred him back to Madison Correctional Institution, where yet another inmate stabbed Campbell.

Campbell filed suit against DOC in circuit court, pleading a single count of common law negligence. In his amended complaint, he alleged that DOC acted negligently when it transferred him back to a prison where he had been assaulted and stabbed by an inmate and where it was foreseeable that he would be attacked again by another inmate. DOC moved to dismiss the complaint, asserting that Campbell's assignment and transfer to Madison Correctional Institution were discretionary, planning-level decisions and that DOC was immune from suit. The trial court denied the motion. This appeal follows. [*]

*Analysis*

We review the trial court's determination regarding sovereign immunity, a question of law, de novo. *See Siegle v. Progressive Consumers Ins.*, 819 So. 2d 732, 734 (Fla. 2002). DOC argues that the trial court reversibly erred when it denied the motion to dismiss because DOC's decisions to classify and assign inmates within the prison system are planning-level decisions for which sovereign immunity has not been waived. We agree.

The doctrine of sovereign immunity is rooted in the common law and provides that the sovereign may not be sued without its consent. *See Agency for Persons with Disabilities v. Toal*, 406 So. 3d 978, 980 (Fla. 1st DCA 2025). As this court recently

---

[*] We have jurisdiction. *See* Fla. R. App. P. 9.130(a)(3)(F)(ii) (authorizing an appeal from a non-final order denying a motion that asserts entitlement to immunity under section 768.28(9), Florida Statutes).

2

reiterated, sovereign immunity is "the rule, rather than the exception," and is supported by important policy reasons:

> As the Florida Supreme Court has explained, there are several policy reasons supporting sovereign immunity, including (1) "the preservation of the constitutional principle of separation of powers"; (2) "the protection of the public treasury"; and (3) "the maintenance of the orderly administration of government." *Id.* (internal citations omitted). Suffice it to say, "sovereign immunity is the rule, rather than the exception." *Pan-Am Tobacco Corp. v. Dep't of Corr.*, 471 So. 2d 4, 5 (Fla. 1984).

*Id.* Despite these policy considerations, the people of Florida authorized the Legislature to, by general law, waive the State's immunity and provide consent to being sued. *See* Art. X, § 13, Fla. Const. ("Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating."). Even so, "any waiver of sovereign immunity must be clear and unequivocal." *Am. Home Assurance Co. v. Nat'l R.R. Passenger Corp.*, 908 So. 2d 459, 472 (Fla. 2005).

A limited waiver of sovereign immunity for tort actions is found in section 768.28, Florida Statutes (2021). The waiver applies to the government's operational-level activities when there is an underlying common law or statutory duty of care. *Trianon Park Condo. Ass'n v. City of Hialeah*, 468 So. 2d 912, 919 (Fla. 1985) ("In order to subject the government to tort liability for operational phase activities, there must first be either an underlying common law or statutory duty of care in the absence of sovereign immunity."). But the waiver does not apply to policy-making, planning, or judgmental government functions. *See Wallace v. Dean*, 3 So. 3d 1035, 1053 (Fla. 2009) (explaining that "certain [quasi-legislative] policy-making, planning or judgmental governmental functions cannot be the subject of traditional tort liability") (quoting *Com. Carrier Corp. v. Indian River Cnty.*, 371 So. 2d 1010, 1020 (Fla.1979))). Nor does the waiver extend to operational-level decisions where there is no underlying common law or statutory duty of care. *Id.*

3

Thus, to determine whether a governmental agency is immune from suit in tort, we must first consider whether the challenged agency decision is a planning-level or an operational-level function. The supreme court has explained that a planning-level function requires basic policy decisions whereas an operational-level decision requires implementation of that policy. *Com. Carrier*, 371 So. 2d at 1021.

The question here is whether DOC's decisions to classify and assign Campbell within the prison system were planning-level or operational-level decisions. This court and the supreme court have concluded that such decisions are planning-level decisions and immune from suit in tort. *See Reddish v. Smith*, 468 So. 2d 929 (Fla. 1985); *Davis v. State*, 460 So. 2d 452 (Fla. 1st DCA 1984).

The supreme court first considered the question in *Reddish*, when a citizen sued DOC for negligence after the citizen was abducted and shot by an inmate who had escaped from a minimum-security prison. 486 So. 2d at 930. DOC had reduced the inmate's custody status and transferred him to a minimum-security institution, even though the inmate had been convicted of murder and had previously escaped from custody. *Id.* The citizen alleged that DOC officials were liable for his injuries because they failed to conform to the proper standard of care when they classified and housed the inmate who attacked him. *Id.* The trial court granted DOC's motion to dismiss the complaint on sovereign immunity grounds. But the district court reversed. *Id.* On review, the supreme court had "little difficulty" in holding that the classification and assignment of inmates was a discretionary, planning-level decision for which DOC had sovereign immunity. *Id.* at 931.

This court reached the same conclusion in *Davis*. 460 So. 2d at 452. There, an inmate, whom DOC officials had recommended for placement in close custody, stabbed Davis (another inmate) while they were both housed in the general population. *Id.* at 452. Davis sued DOC, alleging that prison officials were negligent when they placed his attacker in the general population, rather than in close custody. *Id.* at 453. This court affirmed the trial court's order granting summary judgment for DOC and held: "The classification and placement of inmates within the prison system constitutes a

4

discretionary planning level function under the tests set forth in *Commercial Carrier,* therefore sovereign immunity applies." *Id.*

Although the holdings in *Reddish* and *Davis* make clear that DOC is immune from suit with respect to its classification and placement of inmates within the prison system, DOC could be held liable in tort if it fails to follow its own planning-level decisions for classification and placement of inmates. In *Dunagan v. Seely*, 533 So. 2d 867, 869 (Fla. 1st DCA 1988), a detainee was attacked by a fellow inmate in county jail. The plaintiff filed a negligence action against the Sheriff of Escambia County, alleging that jail officials violated certain pre-existing safety procedures. *Id.* at 868. The court denied the Sheriff's motion to dismiss on immunity grounds. *Id.* This court affirmed and distinguished *Davis*, emphasizing that the plaintiff's complaint focused on the Sheriff's failure to follow his own planning-level policies. The court explained that the plaintiff's complaint:

> does not hinge upon allegations of negligence at the planning level, such as in the classification of prisoners or in the policies adopted for their supervision. Here, one allegation is the negligent failure of [the County's] agents to *follow* the planning-level decision to maintain locked cell doors except for five minutes every half hour. That allegedly negligent activity must be classified as an operational-level activity, to which sovereign immunity does not attach.

*Id.*

The supreme court has also held that a government agency may be held liable in tort for harm to persons in their custody when the agency breaches a statutory duty of care. *See Dep't of Health & Rehab. Servs. v. Whaley*, 574 So. 2d 100 (Fla. 1991). In *Whaley*, the supreme court held that the assignment of juveniles by the Department of Health and Rehabilitative Services (HRS) to a particular location in a HRS facility was an operational function, rather than a planning-level function. *Id.* at 101. The court distinguished the case from cases involving the classification and placement of prisoners, explaining that "HRS has specific statutorily imposed duties to protect children" and those duties

5

"are, ultimately, the main difference between this case and prisoner cases such as *Reddish* and *Davis*." *Id.* at 102 n.1; *see also State Dep't of Health & Rehab. Servs. v. Whaley*, 531 So. 2d 723, 729 (Fla. 4th DCA 1988) (explaining that section 39.001(2)(b) and (c) impose a duty of care on HRS when a child is directly in the care of HRS).

The supreme court similarly held that HRS could be sued in negligence for breaching a statutory duty when it failed to place an infant into protective care. *See Dep't of Health and Rehab. Servs. v. Yamuni,* 529 So. 2d 258, 259 (Fla. 1988). There, HRS received numerous reports that an infant was being abused, and a court ordered the infant to be placed under protective supervision. *Id.* But HRS allowed the infant to remain with his mother, and the infant suffered severe injuries while in her care. *Id.* The court held that the HRS case worker's actions did not qualify for immunity because they did not rise to the level of basic policy-making decisions. *Id.* at 260 ("We agree with the district court that the actions of caseworkers investigating and responding to reports of child abuse simply cannot be elevated to the level of policy-making or planning."). The court also explained that section 827.07, Florida Statutes, created a "statutory duty of care to prevent further harm to children when reports of child abuse are received." *Id.* at 261. Thus, the supreme court concluded that sovereign immunity did not shield HRS from suit in tort for the case worker's operational-level activities. *Id.* at 259.

Turning back to this case, unlike in *Dunagan*, Campbell does not allege that DOC failed to follow a particular policy when it classified and assigned him within the prison system. Instead, Campbell alleges that DOC was negligent when it returned him to Madison Correctional Institution after he had first been attacked at that institution because it was foreseeable that he would be attacked for a third time. Campbell's allegations regarding DOC's decisions are more like the allegations by the plaintiffs in *Reddish* and *Davis*: DOC acted negligently in deciding his placement and classification.

And, unlike *Whaley* and *Yamuni*, Campbell does not allege that DOC breached a statutory duty of care when it classified and assigned him within the prison system. We conclude that DOC's

6

classification and assignment of Campbell within the prison system were discretionary, planning-level decisions for which DOC had sovereign immunity. *Reddish*, 468 So. 2d at 931. We therefore REVERSE the trial court's order denying DOC's motion to dismiss.

ROWE, RAY, and WINOKUR, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

Thomas R. Thompson and Mallory B. Brown of Thompson, Crawford, Brown & Smiley, P.A., Tallahassee, for Appellant.

Marie A. Mattox and Ashley N. Richardson of Marie A. Mattox, P.A., Tallahassee, for Appellee.